John C. MAYFIELD, III, and Joseph Vlacovsky, individually and in behalf of all others similarly situated, Plaintiffs,

v.

John H. DALTON, Secretary of The Navy; General Carl E. Mundy, Jr., Commandant, United States Marine Corps; Lieutenant General Charles C. Krulak, Commanding General, Marine Forces Pacific; Brigadier General Richard F. Vercauteren, Commanding Officer, Marine Corps Base Hawaii; Lieutenant Colonel Richard Monreal, Commanding Officer, 1st Radio Battalion, Marine Forces Pacific; Major Vaughn P. Fox, Commanding Officer, B Company, 1st Radio Battalion, Marine Forces Pacific; and John Does 1–25, Defendants.

Civ. No. 95–00344 SPK.

United States District Court,
D. Hawaii.

Sept. 8, 1995.

Eric A. Seitz, Honolulu, Hawaii, for Plaintiffs.

Michael J. Haungs, Trial Attorney, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Theodore G. Meeker, Assistant U.S. Attorney, Steven S. Alm, U.S. Attorney, District of Hawaii, for Defendants.

OPINION IN SUPPORT OF ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS, AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, Senior District Judge.

I. *INTRODUCTION*

Plaintiffs' motions for Summary Judgment and to Certify Class, together with Defendants' Cross Motion for Summary Judgment, came on for hearing on July 17, 1995. On July 19, 1995, this court issued its Order Denying Plaintiffs' Motion for Summary Judgment and Motion to Certify Class, and Granting Defendants' Cross Motion for Summary Judgment, with written opinion to follow. The court herein explains the reasoning for its order.

II. *BACKGROUND*

Beginning with Operation Desert Storm in 1991, the United States military has used DNA analysis to help with identification of soldiers' remains. Such analysis provides a means of identifying remains too badly damaged for identification through dental records or fingerprints. Identification is made by comparing DNA taken from the remains with a DNA sample previously taken from the decedent or his or her biological relatives.

Because of problems with obtaining reliable DNA samples during the Gulf War, the Department of Defense ("DOD") began a program to collect and store reference specimens of DNA from members of the active duty and reserve armed forces. That way, the reference samples would be available for use in identifying remains in future conflicts. The DOD DNA Registry, a program within the Armed Forces Institute of Pathology, was established pursuant to a December 16, 1991 memorandum of the deputy secretary of defense. Under this program, DNA specimens are collected from active duty and reserve military personnel upon their enlistment, reenlistment, or preparation for operational deployment. The military's goal is to obtain specimens from all active and reserve personnel by the year 2001.

The specimens consist of two small samples of dried blood stored on cards and a sample of epithelial cells taken from the inside of the subject's cheek using a cotton swab. One bloodstain card is sealed and stored in the service member's military health record, while the other bloodstain card and the swab sample are sent to the DOD DNA Repository. Once received by the repository, the bloodstain card is vacuum sealed, assigned a number and bar code, and stored in a refrigerated chamber. The swab sample is assigned an identical code and stored in alcohol. The specimens are to be stored in the repository for 75 years and then destroyed.

According to the military, except for a limited number of "quality assurance" tests in which the DNA is typed to ensure that the repository's storage and analytical mechanisms are working properly, DNA is not extracted from the samples unless and until there is a need for it to assist in the identification of human remains.

Also according to the military, access to the repository facility, computer system and the samples themselves is strictly limited. Specimens stored in the repository are not to be used for a purpose other than remains identification unless a request, routed through the civilian secretary of the appropriate military service, is approved by the assistant secretary of defense for health affairs. The Government notes that no such request from this program has ever been approved, though it is unclear how many, if any, such requests have been made.

Plaintiffs are members of the United States Marine Corps assigned to Company B, 1st Radio Battalion, Marine Forces Pacific. Scheduled to deploy in January 1995, the two were ordered to provide specimens for the DNA repository. Plaintiffs refused to do so, and each was charged with violation of an order from a superior commissioned officer. On May 23, 1995, the military judge in Plaintiffs' Court Martial dismissed the charges, holding that the regulations underlying the DNA Repository program were not punitive and thus no disciplinary action could be taken for refusal to provide the specimens. The

Marine Corps has appealed the military judge's decision.

## III. *DISCUSSION*

### A. *Plaintiffs' Constitutional Claims*

Plaintiffs first allege that the collection, storage and use of DNA samples taken without their consent violates their "rights to freedom of expression, privacy, and due process under the First, Ninth, and Fifth Amendments to the United States Constitution, *inter alia*." In their moving papers and argument, however, Plaintiffs rely primarily on the Fourth Amendment to make their case for a constitutional violation.

■ The law is well-established that the Government's compulsory taking of blood and other bodily fluid or tissue samples constitutes a "seizure" subject to scrutiny under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). However, the Fourth Amendment prohibits only "unreasonable" seizures. The Court in *Schmerber* upheld a conviction for driving under the influence based in part on test results from a blood sample taken without the petitioner's consent. The court found the taking of the blood sample "reasonable" where there was probable cause that the petitioner was intoxicated and a delay to obtain a warrant might have resulted in a loss of evidence.

Plaintiffs herein suggest that *Schmerber* established a rule that the Government may not compel a subject to give a blood sample in the absence of a judicial warrant issued upon a showing of probable cause. The court made no such holding, however. What it did say was that it found nothing inherently unreasonable in the test chosen to measure the petitioner's blood alcohol level, noting that blood tests "are a commonplace in these days of periodic physical examination ... and ... for most people the procedure involves virtually no risk, trauma or pain." *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836.

In *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Supreme Court upheld a federally mandated drug and alcohol testing program for private railway workers.

Citing *Schmerber*, the Court repeated its previous observation that the interference with privacy interests occasioned by a blood test is minimal. *Skinner*, 489 U.S. at 625, 109 S.Ct. at 1417–18. The Court weighed this minimal intrusion against the Government's compelling interest in testing railway employees whose jobs involved the safety of passengers and others and found the testing program to be reasonable. *Id.* at 628, 109 S.Ct. at 1419. This was so even though the tests were conducted in the absence of probable cause or even any kind of individualized suspicion.

In *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Court likewise upheld a U.S. Customs Service program requiring drug tests for employees entering positions involving drug interdiction or requiring the carrying of a firearm. The Court noted that certain public employees are necessarily subject to diminished expectations of privacy, and cited as an example members of the military and intelligence services, who "may not only be required to give what in other contexts might be viewed as extraordinary assurances of trustworthiness and probity, but also may expect intrusive inquiries into their physical fitness for those special positions." *Id.* at 671, 109 S.Ct. at 1394.

The taking of blood samples and oral swabs for the purpose of remains identification presents, on its face, a far less intrusive infringement of Plaintiffs' Fourth Amendment privacy rights than the blood testing in either *Schmerber*, *Skinner* or *Von Raab*. The blood test at issue in *Schmerber* involved a seizure of evidence to be used in a possible criminal prosecution. In *Skinner* and *Von Raab*, blood, urine and breath tests were used to detect the illegal or illicit use of drugs or alcohol, the confirmation of which could be grounds for disciplinary action or criminal sanctions.

■ In the instant case, the blood and tissue samples at issue are not to be used as evidence against Plaintiffs, but only as a means of identifying their remains should they be killed in action with the Marine Corps. Although the military itself undoubt-

edly has a significant interest in being able to confirm which of its members have fallen in battle, and which ones may have been taken prisoner or are otherwise unaccounted for, it is the next of kin of service members who will derive the greatest benefit, and solace, from the speedy and definite identification of the remains of their loved ones.

■ Plaintiffs concede that the military's stated purpose for the DNA registry—remains identification—is a benign one. But they argue that the military *could*, at some point in the future, use the DNA samples for some less innocuous purpose, such as the diagnosis of hereditary diseases or disorders and the use or dissemination of such diagnoses to potential employers, insurers and others with a possible interest in such information. Plaintiffs have presented no evidence that the military has used or disclosed, or has any plans to use or disclose, information gleaned from the DNA samples for any purpose other than remains identification. A challenge to such hypothetical future use, or misuse, as the case may be, of the samples in the DNA repository does not present a justiciable case or controversy. *See Fern v. Turman*, 736 F.2d 1367, 1369 (9th Cir.1984), *cert. denied*, 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985) (claim that secretaries of the Army and Air Force should be required to strike plaintiffs' names from list of retired officers subject to recall to active duty not ripe where there was no indication that either plaintiff faced recall).[1]

■ The court finds that the military has demonstrated a compelling interest in both its need to account internally for the fate of its service members and in ensuring the peace of mind of their next of kin and dependents in time of war. The court further finds that when measured against this interest, the minimal intrusion presented by the taking of blood samples and oral swabs for the military's DNA registry, though undoubtedly a "seizure," is not an *unreasonable* seizure and is thus *not* prohibited by the Constitution.

### B. *Breach of Contract*

■ Plaintiffs also contend that the DNA sampling program constitutes a breach of their enlistment contracts with the Marine Corps. They note that the enlistment contracts they signed do not specifically warn recruits that blood and tissue samples will be taken for the DNA registry. Plaintiffs also argue that because they enlisted before the registry was begun, they cannot be deemed to have given their implied consent to the blood and tissue sampling.

In fact, the enlistment documents that Plaintiffs concede they signed make amply clear that military enlistees may be subjected to a plethora of laws, regulations, and requirements that would not normally apply to civilian employees of the Government. The documents also indicate that such laws, regulations and requirements can change at any time:

> Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits and *responsibilities* as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

*See* Mayfield Enlistment Document, Exhibit 1 to Declaration of Lt. Randolph N. Blair, Jr., attached to Memorandum in Support of Defendants' Cross Motion for Summary

---

1. Plaintiffs also complain that the DOD DNA Registry plans to keep the DNA samples on hand for 75 years, far longer, Plaintiffs contend, than is reasonably necessary for the stated purpose of remains identification. Defendants respond, by way of the declaration of Lt. Col. Victor W. Weedn, program manager for the DOD DNA Registry, that the 75–year time frame was decided on because the military may still have need of the DNA samples for remains identification long after a conflict is over or a service member is presumed to believed to have died. Weedn notes that human remains are still being identified from World War II. Weedn also notes that given the large number of service members discharged every year, it would be extremely costly and time-consuming to return or destroy the specimens taken from military personnel who leave the Armed Forces each year.

While some may quibble with Defendants' determination in this area, it is not this court's province to "fine-tune" the military's regulations. Plaintiffs' objection as to the length of time that the samples are to be maintained does not, in and of itself, state a claim of constitutional dimension.

Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

The enlistment documents promise no limits on the military's ability to take blood or tissue samples or perform other medical tests on enlistees, whether for purposes of assessing physical fitness, detecting the use of illegal drugs, or otherwise. Indeed, Plaintiffs were undoubtedly subjected to such tests in connection with their enlistment. The sampling performed in connection with the DNA registry is not so qualitatively different so as to require a separate, more specific form of consent than that required for other testing.

The court finds that the military's taking of blood samples and oral swabs for purposes of obtaining DNA samples for the DOD DNA Registry is not a violation of any enlistment contract between Plaintiffs and the military.

### C. Regulations Governing Research on Human Subjects

■ Plaintiffs also rely on 32 C.F.R. Part 219, *Protection of Human Subjects,* which governs human research conducted, supported or regulated by the military or civilian branches of the federal government. They contend that the military has failed to comply with all of the requirements of the part, which is apparently intended to protect human research subjects and thus prevent a recurrence of past abuses, such as those connected with Government experiments involving exposure to radiation from nuclear blasts or the unwitting ingestion by service personnel of mind altering drugs.

The regulations in question define research as "a systematic investigation, including research development, testing and evaluation, designed to develop or contribute to generalizable knowledge." 32 C.F.R. § 219.102(d). Defendants argue, and the court agrees, that the DOD DNA Registry does not meet the regulatory definition of "research." The DNA samples in question are maintained for a particularized purpose, i.e., the identification of the remains of the samples' donors. According to the military, the only other purpose for which the samples are removed from their repository is for tests to ensure the integrity of the storage process. The

registry does not have as its purpose the development of generalizable knowledge about DNA, the traits of service personnel, or anything else.

Moreover, and perhaps more importantly, there is no evidence that Plaintiffs or their fellow service members are being subjected to any kind of experimentation or research. Once a blood sample and oral swab are taken and stored, the individual service member's relationship with the registry becomes dormant. The sample is not retrieved and scrutinized unless and until the service member is believed to have died in action. Even then, the military's inquiry is limited to determining whether the DNA in the sample matches that in the remains believed to be those of the service member. The service members whose DNA samples are kept in the registry are no more human guinea pigs than are the millions of service members whose dental records were kept on hand by the military to provide for remains identification in past wars.

The court finds that the DOD DNA Registry and related blood and tissue sampling does not violate 32 C.F.R. Part 219.

### D. Plaintiffs' Motion for Class Certification

Plaintiffs have moved this court for an order certifying a class consisting of "all military personnel serving on active duty in the United States Navy and/or the United States Marine Corps who have been or may be compelled to provide blood and/or other tissue samples for DNA identification or testing procedures under currently applicable Navy and/or Marine Corps policies, practices, and/or regulations."

■ The court finds that Plaintiffs do not meet the requirements for class certification under Fed.R.Civ.P. 23. Specifically, the claims of Plaintiffs, as the would-be representative of the class, are not typical of the proposed class within the meaning of Rule 23(a)(3). There are undoubtedly those service members among the class proposed by Plaintiffs who, although compelled, do not oppose, and in fact approve of, the DOD DNA Registry program and the related

blood and tissue sampling. At any rate, Plaintiffs have failed to show that any service members other than themselves actually oppose the program. Accordingly, the court DENIES Plaintiffs' Motion to Certify Class.

## IV. *CONCLUSION*

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment and Plaintiffs' Motion to Certify Class were DENIED and Defendants' Cross Motion for Summary Judgment was GRANTED.