John C. MAYFIELD, III, individually and in behalf of all others similarly situated; Joseph Vlacovsky, individually and in behalf of all others similarly situated, Plaintiffs–Appellants,

v.

John H. DALTON, Secretary of the Navy; Carl E. Mundy, General Commandant, United States Marine Corps; Charles C. Krulak, Lieutenant General, Commanding General, Marine Forces Pacific; Richard F. Vercauteren, Brigadier General, Commanding Officer, Marine Corps Base, Hawaii; Richard Monreal, Lieutenant Colonel, Commanding Officer, 1st Radio Battalion, Marine Forces Pacific; Vaughn P. Fox, Major, Commanding Officer, B Company, 1st Radio Battalion, Marine Forces Pacific; and John Does 1–25, Defendants–Appellees.

No. 95–16626.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1996.

Decided March 27, 1997.

1424

Steve Frank, United States Department of Justice, Washington, D.C., for the defendants–appellees.

Toni G. Wolfman and Colin J. Zick, Foley, Hoag, & Eilot, Boston, Massachusetts, for amicus curiae, Council for Responsible Genetics.

Before WALLACE, SCHROEDER, and ALARCON, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiffs-appellants in this case, John C. Mayfield and Joseph Vlacovsky, filed this action when they were on active duty in the Marine Corps. They challenged the constitutionality of a Department of Defense program to collect and store blood and tissue samples from all members of the armed forces for future DNA analysis (the "repository"). Mayfield and Vlacovsky argued that the compulsory taking of specimens without proper safeguards to maintain the privacy of the donor was a violation of the Fourth Amendment prohibition against unreasonable searches and seizures. *Mayfield v. Dalton,* 901 F.Supp. 300, 303 (D.Hawai'i 1995). In addition, they feared that information obtained from the repository samples, regarding the donors' propensities for hereditary diseases and genetic disorders, might be used to discriminate against applicants for jobs, insurance or benefit programs. *Id.* at 304.

Refusing to comply with the program, Mayfield and Vlacovsky turned to the district court. They sought to represent a class of " 'all military personnel serving on active duty in the United States Navy and/or the United States Marine Corps who have been or may be compelled to provide blood and/or other tissue samples for DNA identification or testing procedures under currently applicable Navy and/or Marine Corps policies, practices and/or regulations.' " *Id.* at 305. The district court granted summary judg-

Eric A. Seitz, Honolulu, Hawai'i, for plaintiffs–appellants.

ment in favor of the government and denied class certification. *Id.* at 302.

On the merits, the district court first held that the DNA repository did not violate any constitutional rights because the taking of specimens without the service members' consent did not constitute an unreasonable seizure in violation of the Fourth Amendment. *Id.* at 304. The court also stressed that the repository was instituted for the purpose of assisting in the identification of soldiers' remains, a purpose that plaintiffs-appellants did not challenge, and that other potential, more nefarious, uses were too speculative to be justiciable. *Id.* The district court also held that Mayfield and Vlacovsky could not adequately represent all members of the class and therefore denied them class certification. *Id.* at 305–306.

The district court's decision came down on September 8, 1995. In the intervening period between its decision and oral argument before this court, Mayfield and Vlacovsky have been honorably separated from active duty without ever having given any blood or tissue samples. The government suggests their claims may thus be moot. Mayfield and Vlacovsky counter that separation from active duty means that they are still contractually obligated to remain in the Marine Corps Reserves, and may thus be required to return to active duty in an emergency situation. Therefore, they argue, their case is not moot.

■ We agree with the government that Mayfield and Vlacovsky's challenge is moot because they are no longer subject to the DNA collection program, and face only a remote possibility that they may ever be subject to the repository policies they seek to challenge. *See Holtzman v. Schlesinger,* 484 F.2d 1307, 1315 (2d Cir.1973)(disagreeing with the service member plaintiffs that a controversy is kept alive when the court can perceive "nothing more than the merest possibility that [the eventuality suggested by plaintiffs] will occur"). In *Holtzman,* the service member plaintiffs had challenged the constitutionality of the war in Cambodia. Although the case was decided on political question grounds, the Second Circuit also observed that because "one of the service

members ha[d] been separated from the service" and none of the plaintiff service members were "presently under orders to fight in Cambodia[,]" their "present status ... moot[ed] the appeal as to them[.]" *Holtzman,* 484 F.2d at 1315. In this case, while there is a "possibility" that a national emergency might arise, and that the military might choose to recall Mayfield and Vlacovsky to active duty, the recall could happen only at some indefinite time in the future and then only upon the occurrence of future events now unforeseeable. " '[S]uch speculative contingencies afford no basis for our passing on the substantive issues' " presented in this case. *Preiser v. Newkirk,* 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975)(quoting *Hall v. Beals,* 396 U.S. 45, 49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969)).

■ Not only are Mayfield and Vlacovsky unable to challenge the regulations that might have affected them in the past, they are also unable to challenge regulations that might apply to them in the future. Such a challenge to future application is not yet ripe. *See* 13A Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction 2d, § 3532 ("Ripeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision."). In *Pence v. Andrus,* 586 F.2d 733 (9th Cir.1978), this court held that plaintiffs, who had not yet been subjected to revised administrative procedures for processing claims under the Alaska Native Land Allotment Act failed to present a ripe claim, because there was no sufficiently imminent threat of injury to them at the time of the challenge. Similarly, there is no sufficiently imminent threat of injury to Mayfield and Vlacovsky at this time.

Moreover, in the intervening time between the district court judgment and oral argument before this court, the military changed the repository in ways that appear to respond to some of plaintiffs-appellants' main concerns. As of April 1996, for example, the maximum length of time that the specimens will now be retained has been shortened from the originally challenged duration of 75 years to 50 years. In addition, upon the request of the donor, the military will now destroy individual specimen samples follow-

ing the conclusion of the service member's military obligation. *See* April 2, 1996 Memorandum from the Assistant Secretary of Defense for Health Affairs.[1] The changes made, which materially alter many aspects of the policy that Mayfield and Vlacovsky challenged in the district court, fortify our conclusion that the likelihood that these plaintiffs-appellants will ever be subject to the policy they challenged in the district court is too remote to make their suit justiciable.

■ We also conclude that the question presented does not fall within the category of harm "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In order for this exception to the mootness doctrine to apply, there must be a reasonable expectation that the same complaining party will be subject to the same injury again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). There is no such "rea-

sonable expectation" in this case. The second requirement for this mootness exception to apply is that the injury suffered must be of a type so inherently limited in duration that it is always likely to become moot before a federal court can fully review it. *Id.* The injury claimed here is not so limited in duration. *See Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir.1996) (citing *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509–10 (9th Cir.1994)).

Finally, Mayfield and Vlacovsky argue that even if their own claims are moot, the entire controversy is not moot, and the district court erred in refusing to certify their class. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (holding that the named plaintiffs may appeal the denial of class certification despite the mootness of their own claims). They claim the class they sought to certify could be represented by other active

1. The full text of the April 1996 Memorandum provides:

Although very few concerns have been expressed regarding the repository, misgivings have been heard from a few that the specimen samples might be used to deny employment or insurance from people or otherwise discriminate based on genetic conditions. No such use is, or has ever been, authorized or contemplated by [the Department of Defense] ("DoD"). The refinements now being adopted are designed to reaffirm DoD's longstanding commitment to, and strengthen procedures for, privacy protections concerning the specimens and any DNA analysis that may be performed on any individual's specimen sample. The following refinements shall be implemented:

1. *Routine destruction schedule.* The period of retention of specimen samples in the repository, established as 75 years ... shall be reduced to 50 years.
2. *Individual specimen sample destruction.* Individual specimen samples will be destroyed upon the request of the donor following the conclusion of the donor's complete military service obligation or other applicable relationship to DoD. Upon receipt of such requests, the samples shall be destroyed within 180 days, and notification of the destruction sent to the donor.
3. *Permissible uses.* Authority to permit the use of any specimen sample in the repository for any purpose other than remains identification is further clarified. Reference (b) limited use of specimen samples to remains identification (exclusive of internal, quality assurance purposes), but did not prohibit the

possibility of use under other circumstances in "extraordinary cases" when "no reasonable alternative means of obtaining a specimen for DNA profile analysis is available" and when the request is approved by the [Assistant Secretary of Defense Health Affairs]. To date, no nonconsensual exception request has been approved. This policy refinement limits "extraordinary cases" to cases in which a use other than remains identification is compelled by other applicable law. Consequently, permissible uses of specimen samples are limited to the following purposes:
a. identification of human remains;
b. internal quality assurance activities to validate processes for collection, maintenance and analysis of samples;
c. a purpose for which the donor of the sample (or surviving next-of-kin) provides consent; or
d. as compelled by other applicable law in a case in which *all* of the following conditions are present:
(1) the responsible DoD official has received a proper judicial order or judicial authorization;
(2) the specimen sample is needed for the investigation or prosecution of a crime punishable by one year or more of confinement;
(3) no reasonable alternative means for obtaining a specimen for DNA profile analysis is available; and
(4) the use is approved by the [Assistant Secretary of Defense, Health Affairs] after consultation with the DoD General Counsel.

duty service members who are subject to the current regulations. Thus, they ask us to remand for appointment of a new class representative.

Under Rule 23 of the Federal Rules of Civil Procedure,

[o]ne or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The district court held, first, that Mayfield and Vlacovsky, who objected to the repository, could not properly represent a class comprised of all service members who were compelled to participate in the program because there were undoubtedly people among the broad class proposed by them who did not oppose the repository, and who, in fact, approved of it and wished the policies fully enforced. *Mayfield,* 901 F.Supp. at 305–306. Because Mayfield and Vlacovsky's interests would thus have been antithetical to the interests of such class members, Mayfield and Vlacovsky could not have adequately represented such class members. *See Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (plaintiffs seeking to enforce an agreement cannot represent class members who do not want it enforced); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* 2d, § 1768. This is not a case where some class members might prefer to leave violation of their rights unremedied. *See Tonya K v. Chicago Board of Education,* 551 F.Supp. 1107, 1111 (N.D.Ill.1982); *Martino v. McDonald's System, Inc.,* 81 F.R.D. 81 (N.D.Ill.1979); *Cottrell v. Virginia Electric & Power Co.,* 62 F.R.D. 516, 520–21 (E.D.Va. 1974). We have here a conflict between the interests of the putative representative and members of the class.

To the extent that Mayfield and Vlacovsky may also have been seeking to represent a more limited class, consisting only of those service members who actually opposed the repository, the district court correctly held that plaintiffs-appellants failed to show that there existed others who could represent such a class. *Mayfield,* 901 F.Supp. at 306; *see In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liability Litigation,* 693 F.2d 847, 854 (9th Cir.1982) (burden is on the party seeking class certification to establish that the requirements of Rule 23(a) have been met).

Having determined that Mayfield and Vlacovsky's separation from active duty has mooted this appeal, we must now decide whether to vacate the district court's judgment. *See Cammermeyer v. Perry,* 97 F.3d at 1239. It has been our general practice to vacate the judgment below whenever a case becomes moot, so as to "prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States v. Munsingwear, Inc.,* 340 U.S. 36, 40–41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950). This general rule, however, is not inflexible. *Cammermeyer,* 97 F.3d at 1239. In deciding whether to vacate a prior judgment in a case rendered nonjusticiable, the pivotal question is "whether the party seeking relief from the judgment below caused the [nonjusticiability] by voluntary action." *Id.* (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, ——, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994)). If so, we generally remand with instructions to the district court to weigh the equities and determine whether it should vacate its own judgment. *Cammermeyer,* 97 F.3d at 1239 (citing *Blair v. Shanahan,* 38 F.3d 1514, 1521 (9th Cir.1994); *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982)). Because in this case it was not plaintiffs-appellants who mooted the appeal, *Munsingwear* applies and vacatur is appropriate.

For the foregoing reasons, we vacate the judgment of the district court and remand with instructions to dismiss the case as moot.

VACATED and REMANDED.