**AMERICAN GAMES, INC.,**
**Intervenor–Appellant,**

v.

**TRADE PRODUCTS, INC.,**
**Plaintiff–Appellee,**

and

**Stuart Entertainment, Inc.,**
**Defendant–Appellee.**

No. 97–35275.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1997.

Decided April 28, 1998.

---

Gregory A. Castanias, Thomas M. Fisher, Jones, Day, Reavis & Pogue, Washington, DC, for intervenor–appellant.

William S. Strong, Eileen Hagerty, Kotin, Crabtree & Strong, Boston, MA, for defendant–appellee.

William J. Bender, Skellinger, Bender, Mathias & Bender, Seattle, WA, for plaintiff–appellee.

Before: REAVLEY,* BOOCHEVER, and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

This appeal by an intervenor involves a district court decision to vacate a judgment after the controversy between the original parties was mooted by an asset sale that

---

* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

effectively merged the two companies. The district court determined that the intervenor had standing, but that the merger was motivated by legitimate business reasons only incidental to the mooted case. The court concluded that the equities favored vacatur. We affirm.

## I. Facts and Procedural History

Stuart Entertainment ("Stuart") holds copyrights on several bingo card series. Stuart sued Trade Products, Inc. in a Washington federal district court for allegedly infringing its bingo card copyrights. On a summary judgment motion the district court ruled that the bingo card series were not copyrightable. Stuart appealed.

Meanwhile, in an Iowa federal district court, Stuart sued a third company, American Games, Inc., for alleged infringement of copyrights to a similar bingo card series. American Games defeated Stuart's motion for a preliminary injunction in that case by pointing to the Washington court's earlier judgment, which allegedly persuaded the Iowa district court that Stuart could not show probable success upon a trial on the merits. American Games began monitoring the progress of the Trade Products suit in Washington.

While the Trade Products case was pending on appeal, Stuart learned that a deal to sell Trade Products to a Canadian company had fallen through and the owners of Trade Products were seeking a new buyer. Stuart and Trade Products entered into negotiations, during which they sought and obtained postponement of oral argument in the pending appeal. The two companies reached an agreement whereby Stuart acquired Trade Products' assets for $37 million and Trade Products' three shareholders became directors of Stuart. As a result of that merger, the parties' interests were no longer adverse, and the case on appeal became moot. The parties requested dismissal of the appeal and vacation of the district court judgment. This court dismissed the appeal and remanded to the district court "for the purpose of considering the motion for vacatur" and to decide whether to permit American Games to intervene to oppose that motion.

On remand, the district court permitted American Games to intervene. Stuart argued that vacatur was appropriate under the rule of *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), because the case was mooted by the "happenstance" of the merger. The district court disagreed because the Supreme Court described "happenstance" as circumstances unattributable to the parties, whereas the merger was the work of the parties. Nor did the district court apply the rule of *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), that cases mooted by settlement should be vacated only in "exceptional circumstances." Based on testimony by the principals of Stuart and Trade Products, the district court determined that the merger was motivated by legitimate business reasons only incidental to the mooted case, and not for the purpose of settling the case. The court decided that this case "falls somewhere between *Bonner Mall* (mootness by settlement) and *Munsingwear* (mootness by happenstance)." Then, following *Dilley v. Gunn,* 64 F.3d 1365 (9th Cir.1995), a Ninth Circuit case involving a roughly analogous situation and decided after *Bonner Mall,* the court performed an equitable balancing of the hardships and the public interests at stake, which it concluded weighed in favor of vacatur. The district court issued the vacatur order, and American Games appealed.

## II. Standard of Review

■ This court reviews a district court's grant of vacatur for abuse of discretion. *National Union Fire Ins. Co. v. Seafirst Corp.,* 891 F.2d 762, 765 (9th Cir.1989).

## III. Analysis

### A. Intervenor's Standing to Appeal District Court's Vacatur

■ Stuart questions whether American Games has standing to pursue this appeal because its intervention was granted by the district court merely "[i]n the interest of full discussion of the issues." "[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permit-

ted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." *Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986).

■ "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies,'" *id.* at 61, 106 S.Ct.at 1703, and requires "'the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury ... and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'" *Id.* at 70, 106 S.Ct. at 1708 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)) (internal citations and quotations omitted); *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ American Games is the defendant in an Iowa lawsuit brought by Stuart which raises the same or similar copyright issues presented in this case. American Games stands to benefit directly from the preclusive effect of the district court's decision on those issues if that court's vacatur decision is reversed. The actual or threatened injury to American Games is the loss of the preclusive force of the district court's decision. That loss is traceable to the district court's vacatur order, and is redressable by favorable action on appeal should this court decide to reverse that vacatur order, restoring the decision. Thus, American Games satisfies the constitutionally required minima for standing in an Article III court.

### B. Standard for Vacatur

■ Stuart claims that the district court erred in employing an equitable balancing test to determine whether to vacate its own unreviewed judgment, mooted by voluntary action of the parties, rather than applying *Bonner Mall*'s "exceptional circumstances" test.

The intervenor and the parties agree that an appellate court should not vacate a district court decision mooted while pending on appeal unless it was mooted either by "happenstance," *United States v. Munsingwear,* 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950), or, if mooted by settlement, there exist "exceptional circumstances" to justify vacatur. *U.S. Bancorp v. Bonner Mall,* 513 U.S. 18, 29, 115 S.Ct. 386, 393–94, 130 L.Ed.2d 233 (1994). However, the intervenor and the parties dispute whether the *Bonner Mall* "exceptional circumstances" test applies when, as here, a district court vacates its *own* decision after an appellate court remands for the trial court to decide whether a motion for vacatur should be granted.

In *Bonner Mall,* the Supreme Court fashioned a rule to guide its own decisions whether to vacate lower court judgments, and then announced that "it is appropriate to discuss the relevance of our holding to motions at the court of appeals level for vacatur of district-court judgments." 513 U.S. at 28, 115 S.Ct. at 393. The Court extended to the appellate courts the holding of the case, that "mootness by reason of settlement does not justify vacatur of a judgment *under review*" except in "exceptional circumstances." *Id.* at 29, 115 S.Ct. at 393 (emphasis added). The Supreme Court then closed its discussion by stating:

> Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

*Id.* The proper interpretation of that sentence lies at the heart of this dispute. If the *Bonner Mall* "exceptional circumstances" rule does govern district courts' vacatur decisions, the district court in this case applied the wrong legal standard.[1] If, on the other hand, the district court need only balance the

---

1. The district court made no finding of "exceptional circumstances" in this case. Also, by determining that the case fell "somewhere between *Bonner Mall* (mootness by settlement) and *Mun-* *singwear* (mootness by happenstance)," the district court suggested that it was departing from, rather than applying, the *Bonner Mall* test.

equities, as contemplated by F.R.C.P. Rule 60(b)(5), it did not err.

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Rule 60 provides the basis for a district courts' vacation of judgments when the equities so demand, but it does not establish what substantive standards should be employed. The advisory committee notes to the 1946 amendments include the following commentary: "It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief."

Ninth Circuit decisions after *Bonner Mall* support the reading urged by Stuart, that a district court may vacate its own decision in the absence of extraordinary circumstances. Those decisions have kept in force this court's "established procedure" of remanding "so the district court can decide whether to vacate its judgment in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Dilley v. Gunn*, 64 F.3d 1365, 1370–71 (9th Cir.1995) (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir.1982)).

The district court's reliance upon *Dilley* was apposite because that case decided the same issue on roughly analogous facts. In *Dilley*, an inmate of Calipatria state prison obtained an injunction in district court requiring the prison warden to provide him with adequate access to the prison law library. The warden appealed. While the case was pending on appeal it was mooted by Dilley's transfer out of Calipatria to a lower

security prison facility. The warden sought vacatur of the district court's judgment. The warden claimed that Dilley was transferred to a lower security prison not for the purpose of mooting the case but pursuant to prison regulations because he had served a specific amount of time at Calipatria without substantial disciplinary problems.

This court remanded the case to the district court to apply the *Ringsby* equitable balancing test quoted above to decide whether the district court's earlier judgment should be vacated. This court instructed that "*Ringsby* can apply even if the appellant engaged in the conduct which caused the mootness for a purpose other than to prevent the appellate court's review of the district court's order." *Id.* at 1371. *Dilley* makes clear that the district court should consider the motives of the party whose voluntary action mooted the case: "Of course, if the district court determines that the appellant did not intend to avoid appellate review and to have the district court's order vacated, that factor may weigh equitably in favor of vacating the order." *Id.* at 1372 n. 6. This court's clear instructions to the district court bear full recitation:

If the district court concludes that Dilley's transfer from Calipatria occurred "by happenstance," then automatic vacatur is appropriate under *Munsingwear*. If, however, the district court finds that the defendants played a role in Dilley's transfer and that the transfer was related to the pendency of this appeal, then *Ringsby* applies to this case and the district court must then decide whether to vacate the injunction in light of "the consequences and attendant hardships of dismissal or refusal to dismiss" and the "competing values of finality of judgment and right to relitigation of unreviewed disputes."

*Dilley*, 64 F.3d at 1372 (quoting *Ringsby*, 686 F.2d at 722).

Since *Bonner Mall* we also decided *Cammermeyer v. Perry*, 97 F.3d 1235 (9th Cir. 1996). In that case, the National Guard dismissed Colonel Cammermeyer for stating that she was a lesbian. Cammermeyer challenged the regulations and her dismissal. The district court found her discharge and

the regulations unconstitutional and ordered Cammermeyer reinstated. This court held the case was moot because the defendants had conceded that Cammermeyer should have been reinstated and had rescinded the challenged regulations. The Army sought to have the district court judgment vacated.

This court quoted *Bonner Mall*'s command that "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 1239. The court found that condition satisfied because "it was defendants who rendered [the] case moot by conceding that Cammermeyer should be reinstated and by replacing the challenged regulation." *Id.* Then, citing *Bonner Mall*, this court declined to vacate the judgment because it was "aware of no equitable factors that distinguish this case from ... *Ringsby* and therefore decline to grant the 'extraordinary remedy of vacatur.'" *Id.* But then the court stated: "However, the district court is not precluded by our denial from vacating its own judgment after an independent review of the equities, and we therefore follow our established practice of remanding the case to the district court for such a determination." *Id.* (citation omitted).

More recently still, this court decided *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997), in which U.S. Marines challenged the requirement that they provide DNA samples. The cases of some soldiers were mooted when they separated from active duty without having provided DNA samples. *Mayfield* repeats the command that "the pivotal question is 'whether the party seeking relief from the judgment below caused the [nonjusticiability] by voluntary action.'" *Id.* at 1427 (alteration in original) (quoting *Bonner Mall*, 513 U.S. at 24, 115 S.Ct. at 391). Although we found vacatur appropriate in *Mayfield* because the mootness was not caused by voluntary action, we stated that when voluntary action is the cause "we generally remand with instructions to the district court to weigh the equities and determine whether it should vacate its own judgment." 109 F.3d at 1427.

American Games tries mightily, but unpersuasively, to read the "exceptional circumstances" test into the remand instructions of the three Ninth Circuit cases described above. To bolster its argument, in its reply brief it quotes phrases from one very recent Supreme Court case, *Agostini v. Felton*, —— U.S. ——, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), and one Ninth Circuit case, *S.E.C. v. Worthen*, 98 F.3d 480 (9th Cir.1996). In *Agostini*, the Supreme Court reviewed a district court's denial of a vacatur motion, which put the Supreme Court in the position of asking itself whether "*we* should ... grant Rule 60(b)(5) relief *here.*" —— U.S. at ——, 117 S.Ct. at 2018 (emphases added). When the Supreme Court itself decides whether to vacate a lower court decision, it is unsurprising that it would apply *Bonner Mall*'s "exceptional circumstances" test developed for precisely that purpose. The Court did not discuss the proper standard at the district court level.

In *Worthen*, this court considered whether a district court abused its discretion by denying a motion to modify a permanent injunction pursuant to Rule 60(b)(5), and in so doing we characterized such relief from judgment as "extraordinary relief." 98 F.3d at 482. However, *Worthen* draws this characterization from a line of cases involving the modification of permanent injunctions, which originated with Justice Cardozo's decision in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). *Id.; see Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir.1990). Notably, *Worthen* does not mention *Munsingwear* or *Bonner Mall*, or profess to discuss the appropriate standard for vacatur motions.

According to the post-*Bonner Mall* Ninth Circuit decisions, the district court below could have vacated its own judgment using *Ringsby*'s equitable balancing test even if Stuart and Trade Products had mooted their case by settlement. However, the court determined that mootness caused by merger "falls somewhere between *Bonner Mall* (mootness by settlement) and *Munsingwear* (mootness by happenstance)." As such, the district court's grant of the vacatur motion

seems well within the bounds of its discretion. Given the fact-intensive nature of the inquiry required, it seems appropriate that a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance.

## C. Public Policy Considerations

 American Games and the amici caution that vacatur may be used by litigants to manipulate the common law to suit themselves. They describe the paradigm of such abuse as insurers who "buy and bury" decisions unfavorably interpreting standard form policy language widely used by the industry. *Cf. Mancinelli v. International Business Machines*, 95 F.3d 799, 800 (9th Cir.1996) (Kleinfeld, J., dissenting) (the loser in litigation normally should not be allowed to "buy an eraser for the public record"). That concern is misplaced on the facts of this case. Stuart did not merely buy Trade Products' assets. It gave all three Trade Products' shareholders seats on Stuart's board of directors. The district court examined the merger transaction and satisfied itself that it was incidental to the pending case. Such scrutiny is appropriate because, on different facts, a "buy and bury" strategy could easily be disguised as a merger. The incentive to do so might exist whenever the value of erasing an adverse decision amounted to an attractive discount on the purchase of a smaller company with saleable assets. Thus, in cases of merger, the district courts should probably evaluate the economics and incentives of the transaction to smoke out subterfuge.

In this case it seems unlikely that, as Stuart argues, the merger "transaction had nothing to do with the pendency of Stuart Entertainment's appeal." The prospect of mooting the case, and vacating the judgment, especially with the American Games suit pending, presented a possible bonus. The district court, however, properly considered that this was a $37 million merger, entered into partly to avoid the purchase of Trade Products by Stuart's competitor. The evidence was that none of the principals even mentioned the relatively trivial pending lawsuit.

Thus, facts support the district court's finding that the prospect of vacating the judgment was not the primary motive for the sale, but was instead only incidental to it. The monetary amount involved in the merger appeared to be much more than was involved in the infringement suits and, significantly, Stuart invited all three of Trade Products' shareholders to join Stuart's board of directors. In light of such facts, the district court's finding that the merger was incidental to the law suit was not clearly erroneous. Moreover, in the absence of the merger Stuart had maintained its right to appeal the adverse decision. Without the vacatur it would lose the right to have the adverse copyright decision reviewed by an appellate court. We conclude that in balancing the equities, the district court did not abuse its discretion by granting Stuart's vacatur motion.

**AFFIRMED.**