**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT AYOTTE, | No. 13-35012 |
| Plaintiff - Appellant, | D.C. No. 2:09-cv-00057-RFC |
| v. | |
| AMERICAN ECONOMY INSURANCE COMPANY, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Senior District Judge, Presiding

Argued and Submitted May 14, 2014
Seattle, Washington

Before: O'SCANNLAIN, KLEINFELD, and BERZON, Circuit Judges.

The district court granted summary judgment in favor of American

Economy Insurance Company ("American Economy") on Ayotte's claims for

advance medical payments under Ridley v. Guaranty National Insurance Co.,

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

951 P.2d 987 (Mont. 1997) and common law bad faith. Ridley holds that under a Montana statute, a liability insurer may not defer payment of an injured third party's medical expenses until final settlement, if liability is "reasonably clear," and it is "reasonably clear that the expense is causally related to the accident in question." Id. at 992. The district court ruled against Ayotte's entitlement to these payments because the liability of American Economy's insured was not "reasonably clear." For the same reason, the court ruled that American Economy did not commit common law bad faith by not making the payments.

Though Ayotte appealed, the appeal was never adjudicated. While the appeal was pending, American Economy's insured confessed judgment for an amount in excess of what American Economy claims is the policy limit. Ayotte then moved to dismiss his appeal as moot and to vacate the summary judgment.

In a separate action, Ayotte is now suing American Economy on various theories of bad faith. He seeks vacatur of the district court's decision that the liability of American Economy for the interim medical payments was not "reasonably clear," because of the possible collateral estoppel or other adverse impact that determination may have upon his pending bad faith claims.

2

We dismissed Ayotte's appeal as moot and remanded to the district court to determine whether vacatur should be granted. The district court denied vacatur and Ayotte appeals.

A district court's decision to deny vacatur is reviewed for abuse of discretion. Nat'l Union Fire Ins. Co. v. Seafirst Corp., 891 F.2d 762, 765 (9th Cir. 1989). We treat the district court's application of an erroneous legal standard as an abuse of discretion. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223 (9th Cir. 2000).

When this case came before us on the interim medical payments issue, we remanded the case to the district court to determine whether vacatur should be granted, citing U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29 (1994) and Allard v. DeLorean, 884 F.2d 464, 467 (9th Cir. 1989). Bonner Mall addresses whether a court of appeals may vacate a district court judgment that was mooted by settlement as opposed to "happenstance." Bonner Mall, 513 U.S. at 25. The Supreme Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review" absent "exceptional circumstances." Id. at 29. But the Court explained that "a court of appeals presented with a request

3

for vacatur of a district court judgment may remand the case" "even in the absence of, or before considering the existence of, extraordinary circumstances." Id. We considered this language in American Games, Inc. v. Trade Products, Inc., 142 F.3d 1164, 1167–69 (9th Cir. 1998), and held that the Bonner Mall rule requiring "exceptional circumstances" for vacatur applies only to appellate courts.

Accordingly, American Games holds that Bonner Mall did not overrule this court's "established procedure" of remanding a vacatur request so that the district court can apply an "equitable balancing test." Id. at 1168. American Games sets out various considerations that a district court should consider. The considerations include, but are not limited to, "the consequences and attendant hardships of dismissal or refusal to dismiss," the "competing values of finality of judgment and right to relitigation of unreviewed disputes," the "motives of the party whose voluntary action mooted the case," and the public policy against allowing a losing party to "buy an eraser for the public record." Id. at 1168, 1170.

Our remand order followed our "established procedure" as described in American Games. It cited the language in Bonner Mall allowing a court of appeals to remand for the district court to consider whether vacatur is appropriate. It also

cited <u>Allard</u>, 884 F.2d at 467, where we remanded an appeal mooted by the appellant's settlement with a third party so that the district court could determine whether to vacate its decision after considering the same equitable factors discussed in <u>American Games</u>.

The district court, however, appears to have applied the <u>Bonner Mall</u> standard and denied vacatur because the mootness did not occur by "happenstance." We cannot tell for sure, because the district court did not make the reasoning for rejecting Ayotte's equitable claims clear on the record. <u>See</u> <u>Traxler v. Multnomah Cnty.</u>, 596 F.3d 1007, 1016 (9th Cir. 2010).

American Economy conceded at oral argument and in its brief that the district court used the <u>Bonner Mall</u> standard. American Economy argues that our remand order applied <u>Bonner Mall</u> and directed the district court to do so as well. Our remand order did indeed use the <u>Bonner Mall</u> standard, because that standard applies to appellate courts. The order cites <u>Bonner Mall</u> to explain why we remanded the case, not to prescribe a standard for the district court to use. The district court must apply the <u>American Games</u> standard.

Accordingly, we **VACATE and REMAND** for the district court to determine whether vacatur is appropriate under the standard set forth in American Games.  We do not intimate a view as to whether vacatur is appropriate in this case.  Appellee shall bear the costs of this appeal.

6

*Ayotte v. American Economy Insurance*, No. 13-35012

BERZON, Circuit Judge, concurring:

I concur in the disposition. I write to clarify that the stipulated judgment here should not be given controlling — or even much — weight in the equitable analysis we direct, and to point to a second consideration relevant to that analysis.

## I.

The circumstances here are that the third-party litigation was going to terminate, one way or the other — that is, through settlement or through litigation — independently of this federal court litigation about the interim payment of medical expenses, the so-called *Ridley* payments. *This* litigation was not settled; it was mooted because it concerned an *inherently* time-limited obligation, covering only the period during which the separate litigation between the alleged tortfeasor and the plaintiff was pending. That time period could be longer or shorter, depending upon whether the parties litigated or settled, but it was going to end, and was going to do so independently of whether the insurance company was ultimately determined to have owed *Ridley* payments before termination.

In other words, had the tort litigation not been settled but terminated through litigation, the question in this case — whether *Ridley* payments were due pre-termination — would still have been mooted rather than determined by an appealable judgment. A litigated judgment in the tort case would presumably have

been treated as "happenstance" as it affected this litigation. So the termination by settlement of the third-party tort action, while not happenstance as to that action, was tantamount to happenstance as to this one; for purposes of this action, what mattered was the termination, not how it occurred. Yet, it is not clear to me that the district court even recognized, or appreciated, that the stipulated judgment involved a different case and different parties — facts of obvious relevance to the equities analysis.

Moreover, it is absurd to suppose that the parties to the tort action would have settled that action so as to moot out the question whether *Ridley* payments should have been made. The settlement was for much more than the *Ridley* payments could have been, and involved parties who had no obligation to make *Ridley* payments.

## II.

For me, the hard question in this case is how the district court's denial of Ayotte's claim for common law breach of the insurance company's good faith obligation with regard to the *Ridley* claim affects the vacatur question. It appears that Ayotte either did not pursue on appeal, or invited dismissal as to, that claim the last time he was before us.

The *Ridley* good faith claim would appear to survive the termination of the

2

underlying tort suit. That claim was for consequential damages due to the noncompliance with the *Ridley* requirement to pay interim medical costs, not for those medical payments themselves. Thus, had Ayotte pursued the appeal on the common law bad faith claim, he would probably have avoided dismissal of — and thereby litigated on appeal — that claim.

On the other hand, we deemed the case moot over American Economy's vigorous opposition, and we are not free to reconsider the correctness of our decision. Still, Ayotte's mistake — if that is what it was — in failing separately to pursue on appeal a claim he probably could have litigated had he sought to do so may have some weight in the equitable balance to be conducted on remand.

\* \* \* \*

In sum, there are two unusual circumstances in this case — the settlement was of separate litigation only indirectly connected to this case, and this case originally included a claim that appears to have been considered moot only because Ayotte did not propose to continue to litigate it once the *Ridley* payments themselves were out of the picture. These circumstances should be weighed by the district court on remand, in addition to any others advanced by the parties.