**Valerie DUFRESNE; Riverside County Chronic Fatigue Immune Deficiency Syndrome Support Group, Plaintiffs–Appellants,**

**v.**

**Ann VENEMAN, in her capacity as Secretary of the California Department of Food and Agriculture; Michael Chrisman, in his capacity as Undersecretary of the California Department of Food and Agriculture; California Department of Food and Agriculture; Richard E. Rominger, Secretary, in his capacity as Acting Secretary of Agriculture; U.S. Department of Agriculture, Defendants–Appellees.**

No. 95–56774.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1996.

Decided June 9, 1997.

Hannah Bentley, Alice Chang Kaufman, Law Office of Hannah Bentley, San Francisco, CA, for plaintiffs-appellants.

Helen G. Arens, Deputy Attorney General, Los Angeles, CA, for defendants-appellees Ann Veneman, Michael Chrisman, and California Department of Food and Agriculture.

Michael C. Johnson, Assistant United States Attorney, Los Angeles, CA, for defendants-appellees Richard E. Rominger and United States Department of Agriculture.

Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,* District Judge.

**OPINION**

PER CURIAM.

For 20 years, California has waged war on the Mediterranean Fruitfly, a pest that threatens much of the state's agricultural output. A major weapon in the war has been the spraying of rural counties from the air with the pesticide malathion.

Valerie Dufresne is a resident of Riverside County who claims she was injured by malathion spraying in 1994. According to Dufresne, she left home on doctor's orders before the spraying began;[1] however, malathion residue, a sticky substance that she found on her return, caused her visual impairment and respiratory ailments.

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. She is not, therefore, alleging insufficient notice of the spraying.

Dufresne alleges that she suffers from chronic fatigue syndrome; that a person with chronic fatigue syndrome is disabled for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and that, by spraying with a chemical that exacerbated her symptoms, state and federal officials "discriminated" against her under the ADA. Her co-plaintiffs are members of a support group for chronic fatigue sufferers who claim they would be injured by future spraying.

■ Dufresne sued federal and state officials for money damages—compensation for injuries from past spraying[2]—and for injunctive relief. Her co-plaintiffs sued solely for injunctive relief. Since injunctive relief under the ADA is limited to "reasonable accommodations," *Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985), plaintiffs made the following suggestions in their pleadings: that the state move chemically-sensitive individuals out of target areas before spraying; that the state pay plaintiffs to relocate; or that the state eliminate the program altogether.[3]

Together, they alleged six causes of action. All require a finding that there was discrimination under the ADA or under analogous provisions of the Rehabilitation Act, 29 U.S.C. § 720 *et seq.; see* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights" applicable to ADA claims). The district court granted defendants' motion to dismiss and plaintiffs appeal.

■ Dufresne has waived her claim for money damages from the state defendants. *See* Brief of Appellant at 28–29. Her claim for money damages from the federal defendants is barred by the doctrine of sovereign

immunity. *See Lane v. Pena,* —— U.S. ——, ——, 116 S.Ct. 2092, 2097, 135 L.Ed.2d 486 (1996) ("The clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages ... is lacking in the text of the relevant provisions.").

■ Plaintiffs' claims for injunctive relief have been rendered moot by a positive turn of events: "The Medfly is considered eradicated in the State of California." State Defendants–Appellees' Supplemental Declaration in Support of Mootness Contention, Declaration of Patrick Minyard, Apr. 16, 1997, at 3. Not one live Medfly has been found in the state since 1995. Moreover, the release of sterile insects has proved so effective an eradication technique that aerial spraying is unlikely even if a new infestation were discovered. *See* Federal Defendants/Appellees' Supplemental Declaration Re Mootness, Declaration of Charles P. Schwalbe, Associate Deputy Administrator, USDA, Apr. 18, 1997, at 3; *see also* James P. Miller, "Perhaps Spanish Fly Would Be of Use to These Insects," *Wall St. J.,* March 27, 1997, at 1 ("The fruitless union of neutered males and wild females proved so effective that California, once plagued by medfly infestations, last year declared the insect eradicated."). For these reasons, the Department of Agriculture "does not have any plans in the foreseeable future for the aerial application of pesticides anywhere in the State of California for the eradication of the Medfly." Schwalbe Declaration at 3.

■ If the case has become moot, even while on appeal, we are required to dismiss it. *See Arizonans for Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) ("To qualify as

---

2. She also sued for restitution. We treat this claim as redundant of her compensatory damage claim. *See State of California v. United States,* 104 F.3d 1086, 1095 (9th Cir.1997), *petition for cert. filed,* 65 U.S.L.W. 3694 (Apr. 7, 1997)(No. 96–1596).

3. At oral argument, plaintiffs urged for the first time that the state replace malathion with Suredye, a pesticide they believe is less likely to harm them. Because it is not part of the record, we would not consider this proposed accommodation even were we to reach the merits

of plaintiffs' claims. Nonetheless, we note that efforts to substitute Suredye—should spraying ever be required in the future—are underway. *See* California Department of Food and Agriculture, Mediterranean Fruit Fly Preventative Release Program, Report to the Legislature, March 1997, at 7 ("Field tests are underway and data looks promising. When the field tests are done and efficacy has been demonstrated, Suredye will be submitted to the United States Environmental Protection Agency ... for registration.").

a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' ").

Plaintiffs urge us to proceed to the merits because there is some possibility of future spraying. However, this possibility is too remote to preserve a live case or controversy. In *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir.1997), two servicemen seeking to challenge a military policy separated from active duty before we decided their appeal. They argued their claims were not moot because they could "still ... be required to return to active duty in an emergency situation." *Id.* at 1425. We held that because "the recall could happen only at some indefinite time in the future and then only upon the occurrence of future events now unforeseeable," the claims were moot. *Id.* As in that case, " 'such speculative contingencies afford no basis for our passing on the substantive issues' presented." *Id.* (quoting *Preiser v. Newkirk*, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975)).

For the foregoing reasons, we vacate the judgment of the district court and remand with instructions to dismiss the case as moot.

VACATED and REMANDED. Each side will bear its own costs on appeal.