192 F.3d 1304 (9th Cir. 1999)
 GATX/AIRLOG COMPANY, GATX CAPITAL CORPORATION, AIRLOG MANAGEMENT CORPORATION, FREDERICK L. HATTON and SANFORD P. BURNSTEIN, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, Respondent, THE BANK OF NEW YORK, Real Party in Interest.
 No. 98-70732
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 11, 1999--San Francisco, California
Filed September 24, 1999
 Michele L. Odorizzi, Mayer, Brown & Platt, Chicago, Illinois, for the petitioners.
 Richard R. Mainland, Fulbright & Jaworski, Los Angeles, California, for the real party in interest.
 No appearance for the respondent.
 Petition for a Writ of Mandamus to the United States District Court for the Northern District of California; William H. Orrick, District Judge, Presiding. D.C. No. CV-96-02494 WHO
 Before: Betty B. Fletcher and A. Wallace Tashima, Circuit Judges, and James M. Fitzgerald, District Judge*.
 TASHIMA, Circuit Judge:
 
 
 1
 GATX/Airlog Company, GATX Capital Corporation, and Airlog Management Corporation, (collectively "GATX") petition for a writ of mandamus directing the district court to vacate its order disqualifying the law firm of Mayer, Brown and Platt ("MBP") from representing GATX in the case of GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc. , and related litigation pending before the respondent court in the Northern District of California (the "pending litigation"). The district court granted the motion of real party in interest Bank of New York ("BNY"), one of several parties adverse to GATX in the pending litigation, to disqualify MBP from representing GATX against claims asserted by Evergreen International Airlines ("Evergreen"). See GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc., 8 F. Supp. 2d 1182 (N.D. Cal. 1998). Those claims concern GATX's conversion of ten B-747 aircraft from passenger to freighter configuration for Evergreen. Evergreen alleged that flaws in the conversion design caused the aircraft to be grounded. We have jurisdiction under 28 U.S.C. S 1651. We deny the petition for a writ of mandamus as moot and vacate the district court's disqualification order.
 
 I.
 
 2
 In 1986, GATX entered into a contract with Pemco Aeroplex, Inc. ("Pemco"), in which Pemco agreed to design kits to convert B-747 passenger aircraft into freighter configuration. GATX then used the kits to convert aircraft according to that design.
 
 
 3
 Federal Aviation Regulations ("FAR") require that entities seeking to convert passenger aircraft obtain a Supplemental Type Certificate ("STC") from the Federal Aviation Administration ("FAA"). If the FAA concludes that the converted aircraft will meet applicable FAR airworthiness standards at a specified payload, the FAA will issue the STC. In 1988, the FAA issued an STC for the GATX/Pemco design.
 
 
 4
 Thereafter, GATX entered into a contract to convert Evergreen's passenger aircraft into cargo aircraft. GATX eventually converted four aircraft for Evergreen utilizing the Pemco design. In 1994, BNY became the beneficial owner of one of those four converted aircraft; it also acquired any rights of Evergreen against GATX and Pemco respecting the conversion.
 
 
 5
 In late 1995, the FAA reviewed its certification of the GATX/Pemco conversion design in light of increasing concerns that the design did not enable the planes safely to carry their certified payloads. On January 3, 1996, the FAA issued an Airworthiness Directive ("AD") that imposed operating limitations on the GATX/Pemco-modified planes and reduced the permissible payload of the aircraft from 220,000 pounds to 120,000 pounds. These payloadrestrictions effectively grounded the aircraft because the planes could no longer carry enough cargo to justify the cost of their operation. In its AD, the FAA stated that it had made a "mistake" in originally granting the STC.[1]
 
 
 6
 After the AD was issued, BNY received regular reports from GATX on its efforts to fix the design flaws. In February, 1996, BNY advised GATX of its concern that its investment was at risk. Thus, GATX knew from early 1996 onwards that BNY was the owner of a converted aircraft and that BNY was concerned with the AD.
 
 
 7
 In June, 1996, Evergreen sent a demand letter to GATX asserting various claims regarding the grounded planes. This prompted GATX to retain MBP and to file an action for declaratory relief against Evergreen in the same month. At the time that MBP agreed to undertake GATX's representation, MBP already was counsel for BNY in other, unrelated matters. BNY had been a client of MBP's since 1995 and that representation continued until mid-January, 1998. During that time, MBP represented BNY and various of its subsidiaries in a variety of transactional matters.
 
 
 8
 Despite this simultaneous representation of BNY and GATX, MBP aggressively pursued GATX's interests in the pending litigation, preparing GATX's defense against the claims of Evergreen as an aircraft owner and conducting extensive discovery.[2]
 
 
 9
 In May, 1997, BNY and GATX agreed to toll any statutes of limitations with respect to BNY's claims ("Tolling Agreement") because they were involved in settlement negotiations. According to MBP, the Tolling Agreement was the first time MBP realized that BNY was an owner of an affected aircraft. Nevertheless, MBP did not inform GATX and BNY of any possible conflict of interest until January, 1998, or seek written waivers until February, 1998.
 
 
 10
 On January 30, 1998, BNY terminated the Tolling Agreement and subsequently filed its own action against GATX seeking to recover damages exceeding $10 million arising out of GATX's conversion of its aircraft to freighter configuration. On February 27, 1997, BNY denied MBP's request for a waiver of the conflict. MBP terminated its representation of BNY on March 5, 1998. On March 6, 1998, BNY moved to intervene in all related cases for the purpose of disqualifying MBP from representing GATX in the pending litigation. The district court granted that motion and also granted BNY's motion to disqualify MBP in all of the pending litigation. See GATX/Airlog, 8 F. Supp. 2d at 1188. GATX seeks to have that order vacated in this mandamus proceeding.
 
 II.
 
 11
 As a threshold matter, we must decide whether this mandamus proceeding has become moot due to events that occurred after GATX filed its petition. A case is moot only if interim events have completely and irrevocably eradicated the effects of an allegedly improper ruling. See In Re Pintlar Corp., 124 F.3d 1310, 1312 (9th Cir. 1997). The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide. See id.; Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 853 (9th Cir. 1985). If a case does become moot while on appeal, however, we are required to dismiss it. See Dufresne v. Veneman, 114 F.3d 952, 954 (9th Cir. 1997). "To qualify as a case fit for federal-court adjudication, `an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " Arizonans for Official English v. Arizona, 520 U.S. 43, 67(1997) (quoting Prieser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974)).
 
 
 12
 MBP has acknowledged that it cannot re-enter the litigation even if we were to grant GATX's petition for mandamus and overturn the disqualification order. Since this petition was filed, another of MBP's clients, General Electric Capital Corporation ("GECC"), has also filed a similar complaint against GATX. MBP recognizes that it is disqualified from defending GATX in the pending litigation against GECC. Thus, MBP's decision that it cannot re-enter the litigation as long as GECC is a party effectively negates any possible relief we could provide: MBP is prohibited, by GECC's participation in the lawsuit, from defending GATX in the pending litigation even if the order of disqualification as against BNY were to be lifted. Accordingly, we conclude that GATX's petition has become moot.
 
 
 13
 MBP urges us to proceed to the merits because there is some possibility of its re-entering the litigation if GECC were to drop out. This possibility is too remote, however, to preserve a live case or controversy. See, e.g., Dufresne, 114 F.3d at 954-55 (holding that possibility of future spraying of fields too remote to require proceeding to merits); Mayfield v. Dalton, 109 F.3d 1423, 1425 (9th Cir. 1997) (holding there was no live case where possibility of recalling two servicemen to active duty was unforeseeable). As BNY argues, there is no showing that settlement discussions are underway between GATX and GECC that would provide any reason to believe that GECC will disappear as a party. This sort of speculative contingency affords us no basis to address the substantive issues presented. See Dufresne, 114 F.3d at 955.
 
 
 14
 Moreover, the interest of a disqualified, non-party law firm in vindicating its good name is insufficient to prevent mootness. Reviewing the district court's order by way of mandamus at this stage would not affect the interests of petitioner GATX; it has already acquired new counsel and vindicating the interest of MBP will not result in MBP re-entering this case as GATX's counsel. Thus, it would be inappropriate for us to proceed to the merits of this case.
 
 
 15
 MBP also claims that the district court's disqualification order in this case precludes it from representing GATX in a separate case against the FAA. Its basis for this claim is a letter sent by BNY to GATX purportedly contending that MBP is barred from representing GATX in the FAA case as well.
 
 
 16
 The district court's order, however, does not speak to the FAA case. MBP has not been disqualified from representing GATX in the FAA case. Accordingly, like the possibility that GECC will drop out of the pending litigation, MBP's disqualification from the FAA litigation remains only a speculative possibility. As BNY points out, its letter was simply an inquiry of MBP as to MBP's intentions in a separate action.
 
 III.
 
 17
 Having determined that MBP's representation of GECC has mooted this mandamus proceeding, we must now decide whether to vacate the district court's order of disqualification. See Mayfield, 109 F.3d at 1427. "When a civil case becomes moot pending appellate adjudication, the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss." Arizonans for Official English, 520 U.S. at 71 (quoting United States v. Munsingwear, Inc. 340 U.S. 36, 39 (1950)) (internal quotation marks and alterations omitted). "Vacatur is in order when mootness occurs through happenstance--circumstances not attributable to the parties--or . . . the unilateral action of the party who prevailed in the lower court." Id. at 71-72(internal quotation marks and citation omitted). See also Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 799 (9th Cir. 1999) (en banc) ("When mootness occurs in a civil action due to happenstance, the established practice in federal court is to vacate the decision below.") (citing Arizonans for Official English, 520 U.S. at 71).
 
 
 18
 We have explained our practice and the reasons for it, as follows:
 
 
 19
 It has been our general practice to vacate the judgment below whenever a case becomes moot, so as to "prevent a judgment, unreviewable because of moot ness, from spawning any legal consequences." United v. Munsingwear, Inc., 340 U.S. 36, 40-41 (1950). This general rule, however, is not inflexible. Cammermeyer [v. Perry], 97 F.3d [1235 ] at 1239 [(9th Cir. 1996)]. In deciding whether to vacate a prior judgment in a case rendered nonjusticiable, the pivotal question is "whether the party seeking relief from the judgment below caused the [nonjusti ciablity] by voluntary action." Id. (citing U.S. Ban corp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 24 (1994)). If so, we generally remand with instructions to the district court to weigh the equities and determine whether it should vacate its own judgment. Cammermeyer, 97 F.3d at 1239 (citing Blair v. Shanahan, 38 F.3d 1514, 1521 (9th Cir. 1994); Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir. 1982)). Because in this case it was not plaintiffs-appellants who mooted the appeal, Munsingwear applies and vacatur is appropriate.
 
 
 20
 Mayfield, 109 F.3d at 1427. The Munsingwear rule applies in mandamus proceedings. See New York City Housing Dev. Corp. v. Hart, 796 F.2d 976, 978 (7th Cir. 1986); see also In re General Motors Corp., 1995 WL 940063 (4th Cir. 1995) (applying Bonner Mall in mandamus proceeding).[3]
 
 
 21
 In this case, it was GECC's entrance into the pending litigation that mooted the mandamus petition, an action which cannot be attributed to either GATX or BNY. Because mootness was brought about by the independent action of a third party, GECC, vacatur is appropriate.
 
 IV.
 
 22
 For the foregoing reasons, we vacate the district court's order of disqualification as moot and deny GATX's petition for a writ of mandamus.
 
 
 23
 PETITION DENIED.
 
 
 
 Notes:
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.
 
 
 [1]
 The FAA, however, did not explain the reason for its "mistake."
 
 
 [2]
 Of course, any defense against Evergreen would, presumably, be just as viable as a defense against other converted aircraft owners, including BNY.
 
 
 [3]
 Lacking direct circuit precedent on the issue, we follow the Seventh and Fourth Circuits in applying the Munsingwear/Bonner Mall test in mandamus proceedings. In Armster v. United States Dist. Court, 806 F.2d 1347 (9th Cir. 1986), we noted that considerations of mootness may differ when "[a]n appellate court [is] exercising discretionary jurisdiction." Id. at 1356 n.12. The issue, however, was not directly before us in that case (which involved the issue of whether a prior appellate opinion should be vacated because of mootness). We did note that where, as here, once the court has decided to review the case, different considerations apply than in a case which becomes moot before discretionary review is granted. Id.