347 F.3d 742
 Sarah Curtis FOSTER; Kim Jean Fey; Anthony Wohllaib; and Metropolitan Public Defender Services, Inc., an Oregon corporation, Plaintiffs-Appellants,
v.
Honorable Wallace P. CARSON, Jr., in his capacity as Administrative Head of the Oregon Judicial Department; Hon. Dale R. Koch, in his capacity as Administrative Head of the Multnomah County Circuit Court; and Kingsley W. Click, in her capacity as State Court Administrator, Defendants-Appellees.
Ross M. Shepard, Director, Public Defender Services of Lane County, Inc.; Public Defender Services of Lane County, Inc; F. Douglass Harcleroad, District Attorney for Lane County; and Jason Allen Frost, Plaintiffs-Appellants,
v.
The Honorable Mary Ann Bearden; The Honorable Jack A. Billings; The Honorable Eveleen Henry; The Honorable Karsten H. Rasmussen; and the Honorable Wallace P. Carson, Jr., in his capacity as Administrative Head of the Judicial Department of the State of Oregon, Defendants-Appellees.
 No. 03-35457, 03-35458.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 8, 2003 — Portland, Oregon.
 Filed October 17, 2003.
 
 COPYRIGHT MATERIAL OMITTED Elden M. Rosenthal, Rosenthal & Greene, P.C., and Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, Oregon, for the plaintiffs-appellants.
 Janet A. Metcalf, Assistant Attorney General, Salem, Oregon, for the defendants-appellees.
 Appeals from the United States District Court for the District of Oregon; Michael R. Hogan, District Judge, Presiding. D.C. Nos. CV-03-06075-HO, CV-03-00437-HO.
 Before: Cynthia Holcomb HALL, Susan P. GRABER, and Ronald M. GOULD, Circuit Judges.
 OPINION
 GRABER, Circuit Judge:
 
 
 1
 These consolidated appeals challenge the constitutionality of an Oregon judicial-budget austerity plan known as the "Budget Reduction Plan" ("BRP"). Under the BRP, for four months indigent defendants who were charged with certain listed crimes had their criminal proceedings suspended and were not afforded counsel. Plaintiffs include indigent criminal defendants, indigent defenders, and the Lane County District Attorney. They appeal the district court's dismissal, on grounds of Younger abstention, of these actions alleging that their constitutional rights were violated by various Oregon officials who formulated or implemented the BRP.
 
 
 2
 The BRP has now expired, and all indigent defendants are once again being afforded counsel and are facing renewed criminal proceedings. Because we cannot undo the alleged harm to Plaintiffs, and because we cannot provide any relief for that harm, we must dismiss these cases as moot.
 
 BACKGROUND
 
 3
 In response to a severe budget shortfall, the Chief Justice of Oregon, in his capacity as administrative head of the state judiciary, issued in early 2003 Chief Justice Orders Nos. 03-028 and 03-029, creating the BRP. The BRP required that all offices of the Oregon courts be closed for public business on Fridays and that the processing of certain kinds of cases be deferred through June 30, 2003. The Orders also authorized the Presiding Judge of each court and the State Court Administrator to take all necessary actions to implement the BRP.
 
 
 4
 Most pertinent to this appeal, the BRP also called for the suspension through June 30, 2003, of all appointments of indigent defense counsel in nine categories of cases. These categories included all nonperson misdemeanors, all nonperson misdemeanor probation violations, all adult nonperson Class C felonies (generally, property and drug offenses), and all adult Possession of Controlled Substance felonies. The BRP explained the effect of this suspension: "At the initial court appearance, affected cases will be rescheduled for a court appearance in the next biennium which begins July 1, 2003."
 
 
 5
 On February 28, 2003, Defendant Kingsley Click, the Oregon State Court Administrator, issued a "NOTICE OF INSUFFICIENT INDIGENT DEFENSE FUNDS FOR PAYMENT OF APPOINTMENTS ACCEPTED AND SERVICES RENDERED ON CERTAIN TYPES OF CASES FILED BETWEEN MARCH 1, 2003, AND JUNE 30, 2003." The Notice announced the suspension of the authorization that permits trial court judges "to appoint counsel, incur expenses, retain services, provide for payment or otherwise incur an obligation of funds payable from the State Court Indigent Defense Account on new cases filed in the Oregon circuit courts between March 1, 2003, and June 30, 2003." Defendant trial judges complied with the foregoing Orders and implemented the BRP.
 
 
 6
 Plaintiffs Metropolitan Public Defender Services, Inc., and Public Defender Services of Lane County, Inc., provide legal services for indigent defendants in Multnomah, Washington, and Lane Counties. The BRP resulted in a temporary cessation of new appointments for these defenders. Plaintiff F. Douglass Harcleroad is the District Attorney for Lane County. Plaintiff Jason Allen Frost is an indigent defendant in a felony nonperson criminal proceeding, which was pending as of the filing date of the Opening Brief, in Lane County Circuit Court. At the time his action was brought, his request for counsel had been denied pursuant to the BRP. Similarly, Plaintiffs Sarah Foster, Kim Fey, and Anthony Wohllaib were charged with crimes and partially arraigned, but also had not been appointed counsel when this action was brought. All of their cases were continued until after June 30, 2003.
 
 
 7
 After the Oregon courts declined to strike down the BRP, Plaintiffs filed two actions in federal district court. Plaintiffs in the lead case were Lane County District Attorney Harcleroad, Ross M. Shepard, Executive Director, Public Defender Services of Lane County, and Frost. Plaintiffs in a second case were Foster, Fey, Wohllaib, and the Metropolitan Public Defender Services. The district court consolidated the two cases. All of the Plaintiffs alleged violations of the First Amendment, the Sixth Amendment right to counsel, and the Fourteenth Amendment guarantees of due process and equal protection. The Multnomah County Plaintiffs also alleged violations of the Oregon Constitution and of various Oregon statutes. Plaintiffs in both of the consolidated cases filed motions for summary judgment with the district court. Defendants moved to dismiss on Younger abstention grounds and, alternatively, moved for summary judgment.
 
 
 8
 The district court held that Plaintiffs had standing, but that Younger abstention applied. The district court therefore granted Defendants' motion to dismiss and denied both sides' motions for summary judgment as moot. Plaintiffs brought these timely appeals.
 
 STANDARD OF REVIEW
 
 9
 We review de novo the question whether a case is moot. Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1116 (9th Cir. 2003).
 
 DISCUSSION
 
 10
 A. These appeals are moot.
 
 
 11
 "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir.1999) (internal quotation marks omitted). Mootness is a jurisdictional issue, and "federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." Id. "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." Ruvalcaba v. City of L.A., 167 F.3d 514, 521 (9th Cir.1999).
 
 
 12
 The Chief Justice's Orders and the BRP are no longer in effect. Funds are being provided for indigent defense. Indigent defense providers are being paid, arraignments are being completed, lawyers are being appointed for indigent criminal defendants and others eligible for appointed counsel, and the Oregon courts are taking pleas.[1]
 
 
 13
 "Where the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed." Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th Cir.2002) (citing Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1095 (9th Cir.2001)). Plaintiffs filed suit to "jump-start" the criminal proceedings that the BRP had suspended. Those proceedings, however, now are underway, and we cannot undo their past, but completed, suspension.
 
 
 14
 Indeed, we are unable to provide any relief to Plaintiffs. Plaintiffs did not seek money damages below; they requested only (1) a declaration that the BRP and the administrative Orders were unconstitutional and void, (2) costs and fees, and (3) any other relief the court deemed appropriate. We cannot undo in the context of this action whatever injury the criminally charged Plaintiffs may have suffered by the delay in their arraignments and in the appointment of counsel. Further, the existence of a claim for attorney fees is not sufficient to revive an otherwise moot action. Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir.1996).
 
 
 15
 For these reasons, the consolidated cases are moot. We are obliged to dismiss the appeals unless some exception to the mootness doctrine applies.
 
 
 16
 B. No exception to mootness applies.
 
 
 17
 Plaintiffs urge us to hold that this case falls under the "capable of repetition, yet evading review" exception to mootness. Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir.2000). This exception "applies only when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Id. (emphasis added).
 
 
 18
 Plaintiffs' assertion that a four-month moratorium such as the BRP is too short in duration to allow for full resolution on the merits is well taken. All parties involved in this action worked expeditiously to resolve this case before it became moot. The district court provided its decision with astonishing speed (one hour after argument), and we permitted an expedited briefing and hearing schedule. Notwithstanding the extraordinary measures employed in this case, the BRP has, indeed, already come and gone. If a plan of the BRP's nature and duration were ever implemented again, it also could sunset before full litigation on the merits was able to be concluded.
 
 
 19
 The question, then, turns on the second requirement of the exception: whether there is a reasonable expectation that the challenged action will be repeated. Plaintiffs cite Armster v. United States District Court, 806 F.2d 1347 (9th Cir.1986) ("Armster II"), as authority for finding that the "capable of repetition, yet evading review" exception applies due to the importance of this case. In Armster II, we refused to vacate as moot our decision in Armster I, 792 F.2d 1423 (9th Cir.1986), which explained that it would be improper for district courts to suspend civil jury trials until the next fiscal year, despite a proposed moratorium calling for their suspension in the light of insufficient funding for jury fees. We stated: [I]n an issue of as great importance as this one — the legality of suspending the right to civil jury trial because of concerns regarding the public fisc — we should be careful not to preclude effective judicial review of conduct that is arguably unconstitutional unless it is abundantly clear that such a result is required. Indeed, our Circuit has long held that there is a strong public interest in the court's resolving important precedential issues, a public interest that militates against a finding of mootness in cases presenting such issues. "[T]he courts have entertained and decided such cases before ... because of the necessity or propriety of deciding some question of law presented which might serve to guide the [legislative] body when again called upon to act in the matter." Boise City Irrigation and Land Co. v. Clark, 131 F. 415, 419 (9th Cir.1904) (quoted with approval in Southern Pacific Terminal v. ICC, 219 U.S. 498, 516, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). See also [United States v.] W.T. Grant Co., 345 U.S. [629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)] (the "public interest in having the legality of the practice settled[] militates against a mootness conclusion."); Olagues v. Russoniello, 797 F.2d 1511, 1517 (9th Cir. 1986) (en banc) ("[B]ecause this case raises important ... constitutional issues, a strong public interest requires us to address the appropriateness of the Government's [actions]") (case not moot). Clearly, the "flexible character of the Art. III mootness doctrine" encompasses consideration of the public interest in safeguarding fundamental constitutional rights. See, e.g., United States Parole Commission v. Geraghty, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).
 
 
 20
 Armster II, 806 F.2d at 1360 (footnote and parallel citations omitted).
 
 
 21
 It is important to note the unusual procedural posture of Armster II. In that case, we addressed a petition by the government not to dismiss an appeal, but to vacate an already published opinion, in the light of events that occurred after the opinion was filed. As we explained:
 
 
 22
 When we rendered our decision in Armster I, all the required aspects of justiciability were present: ripeness, adverseness, etc.... [R]espondent does not ask that we refrain from deciding a case, but rather that we vacate a decision that we have already issued. It bases its request on the argument that, with the post-decision alteration by the district courts of their conduct, the decision has now become moot.
 
 
 23
 Id. at 1354-55 (footnote and citation omitted).
 
 
 24
 This difference in procedural posture is critical. The Armster II panel was asked to vacate an opinion that was not moot when rendered, as an exercise of the court's inherent discretion. By contrast, here, we are bound by the restrictions of Article III. As we stated in Armster II:
 
 
 25
 There is a significant difference between a request to dismiss a case or proceeding for mootness prior to the time an appellate court has rendered its decision on the merits and a request made after that time. Different considerations are applicable in the two circumstances. When we refrain from deciding a case on grounds of mootness, we do so based upon the limitations of our power. We do not have the constitutional authority to decide moot cases. Here, a valid decision has already been rendered. In these circumstances, while we are not precluded from exercising article III power, we are likewise not prohibited from dismissing the case post hoc. Whether or not to dismiss is a question that lies within our discretion. In this case, however, we have not been presented with a sufficient justification for the exercise of that limited, discretionary power.
 
 
 26
 Id. at 1355 (footnote omitted).
 
 
 27
 Armster II, then, is neither controlling nor persuasive authority that the "capable of repetition, yet evading review" exception to mootness applies in this case. We therefore turn to Plaintiffs' remaining arguments urging us to find that there is a reasonable expectation that a plan similar to the BRP will be implemented in the future. Plaintiffs point out that Oregon is still suffering economically. They also remind us that the passage of a budget does not guarantee funding, citing the five special legislative sessions in 2002 at which the Legislative Assembly cut spending from an already passed budget.
 
 
 28
 Notwithstanding these financial clouds, Plaintiffs do not establish a reasonable expectation that they will be subjected to the challenged action again in the future. The only fact in the record before us that supports this claim is that it happened once.
 
 
 29
 The mere fact that a similar order from the Chief Justice might someday issue does not establish a "reasonable expectation" that such an order will issue. We have held that a mere possibility that something might happen is too remote to keep alive a case as an active controversy.
 
 
 30
 In Mayfield v. Dalton, 109 F.3d 1423 (9th Cir.1997), two servicemen who sought to challenge a military policy had been honorably separated from active duty before the court decided their appeal. They argued that their claims were not moot because they could "still ... be required to return to active duty in an emergency situation." Id. at 1425. The court held that, because "the recall could happen only at some indefinite time in the future and then only upon the occurrence of future events now unforeseeable," the claims were moot. Id. We noted that speculative contingencies afford no basis for adjudication of the substantive issues presented. Id. (citing Preiser v. Newkirk, 422 U.S. 395, 403, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).
 
 
 31
 Similarly, in Dufresne v. Veneman, 114 F.3d 952 (9th Cir.1997) (per curiam), the plaintiff sued for injunctive relief to prevent the State of California from using a pesticide called malathion in its efforts to eradicate the Mediterranean Fruitfly ("Medfly"). After the action was filed, events took a turn for the better (except for the fruitflies): it was reported that the Medfly had been eradicated from the state and that, if it ever returned, a different and more effective method of eradication (the release of sterile insects) would be employed. Id. at 954. We held that the possibility of future spraying was "too remote to preserve a live case or controversy" and remanded the case with instructions that it be dismissed as moot. Id. at 955.
 
 
 32
 This case is a closer one than Dufresne — unlike the Medfly, Oregon's economic woes have not been "eradicated." However, the possibility of a future order suspending indigent representation is too remote to justify a view of this action as involving a "live" case or controversy. The economic condition of the state is constantly fluctuating. How the political branches of the state will choose to fund indigent defense, how many indigent defendants will require services, whether a shortfall will occur, and how the state judicial system would address such a shortfall are all unknown. We therefore cannot say that there is a "reasonable expectation" that an order similar to the BRP will be issued again in the future. As in Mayfield and Dufresne, the speculative contingencies present here do not provide us with a basis to pass on Plaintiffs' significant constitutional challenge to the now-expired BRP. These cases, therefore, must be dismissed as moot.
 
 
 33
 DISMISSED.
 
 
 
 Notes:
 
 
 [1]
 If the indigent Plaintiffs have not received appointments of counsel and had their criminal proceedings resumed on or after July 1, 2003, then the reason necessarily is separate from the existence of the BRP, because it expired on June 30, 2003