UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALASKA WILDERNESS LEAGUE; et al., <br><br>             Plaintiffs - Appellants, <br><br> v. <br><br> SALLY JEWELL, Secretary of the Interior; et al., <br><br>             Defendants - Appellees, <br><br>   And <br><br> ALASKA OIL AND GAS ASSOCIATION, <br><br>             Intervenor-Defendant - Appellee. | No. 15-35559 <br><br> D.C. No. 3:15-cv-00067-SLG District of Alaska, Anchorage <br><br><br> ORDER |

Before: KLEINFELD, WARDLAW, and PAEZ, Circuit Judges.

Alaska Wilderness League and other environmental organizations ("Appellants") appeal the district court's order denying summary judgment on claims they brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and granting summary judgment on these claims in favor of the United States Fish and Wildlife Service ("USFWS") and intervenor-defendant Alaska Oil and Gas Association ("AOGA"). In light of certain events that

occurred after this appeal was filed, we ordered the parties to show cause why the appeal should not be dismissed as moot. Appellants, USFWS, and AOGA each filed a letter brief arguing against mootness, and reiterated this position at oral argument. Having thoroughly considered the question of mootness, we disagree with the parties' view. We dismiss this appeal as moot, vacate the judgment and order of the district court, and direct the district court to dismiss this action upon remand.

Appellants challenge an incidental take regulation ("Regulation") promulgated by USFWS pursuant to the Marine Mammal Protection Act of 1972, ("MMPA"), 16 U.S.C. § 1361 *et seq*. The Regulation authorizes the "take" of polar bears and Pacific walruses incidental to oil and gas exploration activity in a 240,000-square-kilometer area of the Chukchi Sea, off the north coast of Alaska. Marine Mammals; Incidental Take During Specified Activities, 78 Fed. Reg. 35,364, 35,364–66 (June 12, 2013).[1] This area includes what USFWS has designated the Hanna Shoal Walrus Use Area ("HSWUA"), a 24,600-square-

---

[1] "Take" includes "any act of 'torment' or 'annoyance' that 'has the potential to injure . . . or . . . disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering.'" *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 898–99 (9th Cir. 2012) (alterations in original) (quoting 16 U.S.C. § 1362(13), (18)(A)(i)-(ii)).

kilometer area that the agency found has "long been recognized as a critical foraging area for the Pacific walrus in summer and fall." *Id.* at 35,371. USFWS authorized incidental take based in part on the finding that the total take of Pacific walruses in the regulated region would have a "negligible impact" on the species. *Id.* at 35,403–04; *see* 16 U.S.C. § 1371(a)(5)(A)(i)(I). Appellants contend USFWS violated the MMPA by predicating its negligible impact finding on undefined future mitigation measures in the HSWUA. Appellants also contend USFWS's environmental assessment, which found that the Regulation would have no significant impact on the environment, violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, because it depended upon a "short, incomplete, and bare list of possible generic mitigation categories for part of Hanna Shoal."

At the time this appeal was filed, Shell was the only firm conducting oil exploration activities in or near the HSWUA. It was also the only firm with an active letter of authorization ("LOA") from USFWS, the means specified in the MMPA's implementing regulations for obtaining authorization to conduct activities pursuant to the incidental take regulation. *See* 50 C.F.R. § 18.27; *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 899 (9th Cir. 2012). On September 28, 2015, Shell announced that it would "cease further exploration activity in

3

offshore Alaska for the foreseeable future." Press Release, Shell Global, *Shell Updates on Alaska Exploration* (Sept. 28, 2015), http://www.shell.com/global/ aboutshell/media/news-and-media-releases/2015/shell-updates-on-alaska -exploration.html. Shell stated that, although it had found some indications of oil and gas, these were not sufficient to justify ongoing exploration because of "the high costs associated with the project, and the challenging and unpredictable federal regulatory environment in offshore Alaska." *Id.* USFWS represents that there has been "reported low industry interest" in any further activity.[2] The parties conceded in their letter briefs and at argument that they are aware of no impending applications to conduct oil and gas exploration activities in the regulated region, which are a necessary antecedent for any further authorizations. The Regulation will expire of its own force on June 12, 2018. 78 Fed. Reg. at 35,364.

---

[2] In addition, on October 16, 2015, the United States Department of the Interior canceled auctions for drilling rights in nearby regions offshore of Alaska, and it denied requests by Shell and Statoil to extend offshore drilling leases. Press Release, U.S. Dep't of the Interior, *Interior Department Cancels Arctic Offshore Lease Sales* (Oct. 16, 2015), https://www.doi.gov/pressreleases/ interior-department-cancels-arctic-offshore-lease-sales. On November 17, 2015, Statoil announced that its leases in the Chukchi Sea were "no longer considered competitive within [its] global portfolio," and that it would exit 66 leases of which it was a stakeholder or operator. Press Release, Statoil, *Statoil Exits Alaska* (Nov. 17, 2015), http://www.statoil.com/en/NewsAndMedia/News/2015/Pages/ 17Nov_Alaska.aspx.

"[W]e bear an independent obligation to assure ourselves that jurisdiction is proper before proceeding to the merits." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015) (quoting *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008)).  We lack jurisdiction "over claims that have been rendered moot because the issues presented are no longer live or because the parties no longer possess a legally cognizable interest in the outcome." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citations and internal quotation marks omitted).  The parties' agreement that a case is not moot "weighs in favor of our jurisdiction," but does not relieve us of our "independent duty to consider *sua sponte* whether a case is moot." *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1141 (9th Cir. 2009) (citation and internal quotation marks omitted).

Appellants brought this action based on their members' aesthetic, conservationist, scientific, and recreational interests in Pacific walruses.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992).  The relief Appellants request, vacatur of the Regulation, is related to these interests only in so far as it reduces the likelihood that Pacific walruses will be harmed.  Appellants cannot seek to set aside agency action based on their "nonconcrete interest in the proper

5

administration of the laws." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (citation and internal quotation marks omitted).[3]

Since this appeal was filed, dramatic changes in circumstances have rendered remote and speculative the possibility that any oil and gas exploration activity will occur in or near the HSWUA in the less than three years before the Regulation expires. Shell has withdrawn from the region; no other firm has expressed interest in entering; and the plummeting price of oil, of which we may take judicial notice, has rendered economically unpalatable for the foreseeable future the substantial capital investment necessary for a firm to engage in oil and gas exploration in the regulated region.[4] Even if an optimistic firm wished to do so, the Regulation does not by itself authorize any activity that could harm or disturb walruses. Under the "two-step process" established by the MMPA's implementing regulations, the firm would first need to obtain an LOA from

---

[3] In their Complaint, Appellants asserted procedural injuries, but stated these were "connected to Plaintiffs' substantive conservation, recreational, scientific, and aesthetic interests." Our law makes clear that "deprivation of procedural rights, alone, cannot confer Article III standing." *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) (citing *Summers*, 555 U.S. at 496–97).

[4] Shell's September 28, 2015 announcement noted that it expected to sustain financial losses as a result of its withdrawal from the region. Press Release, Shell Global, *supra*. Shell stated that the balance sheet carrying value of its Alaska position is "approximately $3.0 billion, with approximately a further $1.1 billion of future contractual commitments." *Id.*

6

USFWS. *Salazar*, 695 F.3d at 899. If it did not, it would be subject to substantial civil and criminal penalties. *Id.* Shell's LOA has expired, and the parties represent that they know of no firm in the region with an active LOA.

The threat of harm on which foundation this action rests, the USFWS-countenanced disturbance of walruses by oil and gas firms, has melted away like so much Chukchi ice. The parties' theory that this threat may yet resolidify before the Regulation expires is premised "upon the occurrence of future events now unforeseeable." *Foster v. Carson*, 347 F.3d 742, 748 (9th Cir. 2003) (citation and internal quotation marks omitted). We have consistently held that such "speculative contingencies afford no basis for adjudication of the substantive issues presented." *Id.*

The parties' arguments to the contrary are unavailing. Appellants contend that our opinion in *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), authorizes facial challenges to MMPA incidental take regulations, without reference to any particular LOA issued under a regulation. More broadly, the parties argue that our Circuit has not found to be moot facial challenges to regulatory frameworks under which allegedly injurious activities may be authorized, even if a given activity has ceased and no such activity is ongoing during the pendency of the appeal. *See, e.g.*, *Washington v. Daley*, 173 F.3d 1158,

1164–65 (9th Cir. 1999). The parties contend such cases are justiciable, either as a general matter, or under the "capable of repetition, yet evading review" exception to mootness doctrine.

Cases in this posture may not necessarily be moot, but it does not follow that they cannot be. Our decisions recognize that where a regulatory framework like the MMPA allows an agency to authorize activities, and the agency has done so and is likely to continue to do so, strictly requiring a plaintiff to limit her facial case to harms associated with some discrete and transitory authorization would be neither expeditious nor constitutionally compelled. *See id.* at 1165. This does not mean the plaintiff can challenge the framework *in vacuo*, based on nothing more than the "speculative contingenc[y]" that some future authorization might be made. *Foster*, 347 F.3d at 748; *cf. Summers*, 555 U.S. at 497. Likewise, the "capable of repetition, yet evading review" exception requires "a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (citation and internal quotation marks omitted).

We conclude that these standards are no longer satisfied here. While they may have been at the time this action commenced, circumstances have changed dramatically, "forestall[ing] any occasion for meaningful relief." *Cantrell v. City*

8

*of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (citation and internal quotation marks omitted).[5]  This conclusion follows from an unusual confluence of regulatory structure and operative facts.  The Regulation has an expiration date in the near future.  The only firm in a position to operate under it near the HSWUA has withdrawn.  No firm appears poised to take its place.  Offshore oil exploration in the Arctic is a daunting, costly activity that is not economically feasible when, as now, the price of oil has plummeted to new lows.  The LOA process, though not subject to the requirements of notice and comment, imposes an additional, delaying step between the Regulation's generalized authorization of incidental take and the particularized authorization of any activity that could disturb or harm Pacific walruses.  Against this backdrop, the parties' theory that circumstances may yet radically change while the Regulation remains in force is simply too "remote and speculative" to rescue from mootness Appellants' claims for injunctive and declaratory relief under the APA.  *See Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008) (citation omitted).

---

[5] Nor does the voluntary cessation doctrine save Appellants' claims.  *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013).  USFWS has not voluntarily ceased any activity, and Shell, though a member of AOGA, is not a party to this case.  Even if the voluntary cessation doctrine applies on these facts, it is not a basis on which to reach the merits of Appellants' claims, as we "conclude the case is moot because the challenged conduct cannot reasonably be expected to recur" during the period the Regulation remains in effect.  *See id.* at 729.

We are mindful that the parties' respective interests in this litigation extend beyond this particular dispute, and it is only natural that, having expended time and resources in this litigation, they would like to see a final judicial resolution. Appellants and AOGA regularly appear in federal court to advocate the positions of their members on similar issues, and USFWS regularly defends its actions against similar MMPA and NEPA challenges. All involved might find some value in a binding merits ruling, whatever the outcome, that they might better understand the legal landscape, or seascape, they inhabit. But litigants cannot create federal jurisdiction by consent alone. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citation and internal quotation marks omitted). Because changed conditions have mooted the underlying controversy, we cannot issue the advisory opinion the parties seek. *See United States v. Yakima Tribal Court*, 806 F.2d 853, 857 (9th Cir. 1986).

"When a civil case becomes moot pending appellate adjudication, '[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Official*

10

*English v. Arizona*, 520 U.S. 43, 71 (1997) (alterations in original) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). "Vacatur is in order when mootness occurs through happenstance—circumstances not attributable to the parties . . . ." *Id.* (citation omitted). We find that vacatur is appropriate under the circumstances here presented, and therefore vacate the judgment and order of the district court, and direct the district court on remand to dismiss this action. *See* 28 U.S.C. § 2106.

This appeal is dismissed as moot, and the judgment and order of the district court are vacated. The district court shall dismiss this action upon remand.

**IT IS SO ORDERED.**