NO.  07-10-0159-CV

                                                             

                                                   IN
THE COURT OF APPEALS

 

                                       FOR THE
SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                      PANEL
E

 

                                                             JANUARY
3, 2011

                                            ______________________________

 

RODNEY EARL WILLIAMS,

 

                                                                                                                        Appellant

                                                                             v.

 

                                                         RICK THALER, ET AL., 

 

                                                                                                                        Appellees

                                         _________________________________

 

                       FROM THE 12TH DISTRICT
COURT OF WALKER COUNTY;

 

                               NO. 25018; HON.
DONALD KRAEMER, PRESIDING

                                           _______________________________

 

Memorandum
Opinion

_______________________________

 

Before
QUINN, C.J., and HANCOCK and BOYD, JJ.

            Rodney Earl Williams (pro se) appeals
the dismissal of his lawsuit against Rick Thaler, Cheryl Lawson, Eileen
Kennedy, John P. Werner, Billy J. Reeves and Linda D. Ebner (collectively
referred to as Thaler).  An inmate, Williams,
sued those individuals alleging retaliation, conspiracy, racial discrimination,
harassment, and cruel and unusual punishment. 
Leave was sought to prosecute his claim as an indigent.  Thereafter, Thaler moved to dismiss the suit
because Williams failed to comply with §14.004 of the Texas Civil Practice and
Remedies Code; that is, Williams failed to file an affidavit “identifying and
describing each lawsuit previously filed by [him].”  The trial court granted the motion and
dismissed the cause with prejudice.  Williams
challenges this dismissal.  We modify the
order, and as modified, affirm it.  

            Section 14.004 requires an inmate
seeking to prosecute claims as an indigent to “file a separate affidavit or
declaration . . . identifying each suit . . . previously brought” pro se.  Tex.
Civ. Prac. & Rem. Code Ann. §14.004(a)(1)
(Vernon 2002).  In the affidavit, the
inmate is obligated to describe each suit by its 1) operative facts, 2) style,
cause number, and court in which it was filed, 3) parties, and 4) outcome.  Id. §14.004(a)(2)
(A)-(D).  Moreover, failing to comply
with §14.004 warrants the dismissal of the suit.  Carson v. Walker, 134 S.W.3d 300, 303
(Tex. App.–Amarillo 2003, pet. denied) (dismissing suit because Carson failed
to mention the operative facts underlying his prior lawsuits).

            Williams lists two lawsuits, “Rodney
Earl Williams vs. Erma Jean Martin” and “Rodney Earl Williams v. Billie Harris
and Deteta Jones, et, al.”
However, he fails to include a description of the operative facts underlying
the relief sought and the cause numbers. 
 Therefore, Williams failed to
comply with §14.004(a), and dismissal was warranted.  

            Accordingly, the trial court did not
abuse its discretion in dismissing Williams’ petition.  Carson v. Walker, 134 S.W.3d at 302
(holding that the appropriate standard of review is one of abused
discretion).  But, because the suit was
dismissed with prejudice and the merits of his underlying claims were not
adjudicated by the trial court, we modify the dismissal to reflect that it was
without prejudice.  See id. at 303
(holding that when the underlying merits of the suit are not adjudicated, the
proceeding should be dismissed without prejudice).  As modified, the order of dismissal is
affirmed.

 

                                                                                    Per
Curiam

 

 

 

 

 






:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0037.CV%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0037.CV%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0037.CV%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0037.CV%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0037.CV%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00037-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
27, 2011

 



 

JIMMY GLEN RIEMER, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE
OF HUGO A. RIEMER, JR., DECEASED, RICHARD COON, JR., JUNE MEETZE COON TRUST,
JOHNSON BORGER RANCH PARTNERSHIP, AND MONTFORD T. JOHNSON, III ON BEHALF OF
THEMSELVES AND OTHERS SIMILARLY SITUATED, APPELLANTS

 

v.

 

THE STATE OF TEXAS AND JERRY PATTERSON, AS COMMISSIONER OF THE GENERAL
LAND OFFICE OF THE STATE OF TEXAS, APPELLEES 



 



 

 FROM THE 84TH DISTRICT COURT OF
HUTCHINSON COUNTY;

 

NO. 30,441; HONORABLE WILLIAM D. SMITH, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

This interlocutory appeal of an order
denying certification of a class action[1]
is another installment in an ongoing dispute between landowners and the State
of Texas over the boundaries of the Canadian River east of the Sanford Dam.[2]  After a previous interlocutory appeal in this
case,[3]
we remanded to the trial court the landowners’ claims alleging an
unconstitutional taking of their property.[4]
The landowners’ pleadings included a class action petition, and after remand
they sought certification of a class. Appellants Jimmy Glen Riemer,
Richard Coon, Jr., the June Coon Trust, the Johnson Borger Ranch Partnership,
and Montford Johnson III, are the proposed class
representatives.  Appellees
are the State of Texas and Jerry Patterson in his capacity as Commissioner of
the General Land Office (jointly, the State). 


Appellants sought certification of a
class described as:

All owners, from 1981 to the present, of any real property interest
adjacent to the Canadian Riverbed from the Sanford Dam east approximately 12
miles to the west boundary of Section 13, Block 47, H.&T.C.RR.
Co. Survey, on the north side of the river, and to the west boundary of Section
56, Block 46, H.&T.C.RR. Co. Survey, on the south
side of the river.

They
requested division of the class into two sub-classes:

Sub-Class 1: From 1981 to present,
all owners of any surface interest in real property adjacent to the Canadian
Riverbed from the Sanford Dam east approximately 12 miles to the west boundary
of Section 13, Block 47, H.&T.RR. Co. Survey, on
the north side of the river, and to the west boundary of Section 56, Bock 46, H.&T.C.RR. Co. survey, on the south
side of the river.

Sub-Class 2: From 1981 to present,
all owners of any mineral or leasehold interest in real property adjacent to
the Canadian Riverbed from the Sanford Dam east approximately 12 miles to the
west boundary of Section 13, Block 47, H.&T.RR.
Co. Survey, on the north side of the river, and to the west boundary of Section
56, Bock 46, H.&T.C.RR. Co.
survey, on the south side of the river.

In its order denying class
certification, the trial court found the June Coon trust, the Borger Ranch
partnership, and Montford Johnson III lacked standing
to bring the claims alleged.  It further
found the claims of the proposed class representatives were not typical of the
class claims, the representatives would not adequately represent the class, and
none of the alternative grounds of Rule of Civil Procedure 42(b) were met.[5]  Appellants bring an interlocutory appeal of
the trial court’s order.[6]

            On
appeal, appellants assert the trial court erred in its conclusion regarding the
standing of the Coon trust, the Borger Ranch partnership, and Johnson, and
assert the court abused its discretion in denying class certification because
they satisfied the four requirements of Rule 42(a) and satisfied one or more of
the Rule 42(b) requirements.  We agree
with appellants on the standing issue, but agree with the State that the trial
court did not abuse its discretion in concluding the proposed class representatives
would not fairly and adequately protect the interests of the class.  Accordingly, we will reverse in part, affirm
in part, and otherwise remand for proceedings consistent with this opinion.

Analysis

Standing

            Before
reaching the requirements for class certification “a named plaintiff must first
satisfy the threshold requirement of individual standing at the time suit is
filed, without regard to the class claims.” 
M.D. Anderson
Cancer Ctr. v. Novak, 52 S.W.3d 704, 710 (Tex. 2001).  “For standing, a plaintiff must be personally
aggrieved; his alleged injury must be concrete and particularized, actual or
imminent, not hypothetical.”  DaimlerChrysler Corp. v.
Inman, 252 S.W.3d 299, 304-305 (Tex. 2008) (footnotes omitted).  Standing is a necessary component of
subject-matter jurisdiction, without which a court lacks authority to hear a
case.  Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 444-45 (Tex. 1993).[7]  Standing is determined at the time suit is
filed in the trial court.  Novak, 52 S.W.3d at
708.  We review a trial court’s
determination of standing de novo.  See
Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  In so doing, we take the pleadings as true
and construe them in favor of the pleader. 
Id. at
226-28.  “It has long been the
rule that a plaintiff’s good faith allegations are used to determine the trial
court’s jurisdiction.”  Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 502-03 (Tex. 2010) (citing Brannon
v. Pac. Employers Ins. Co., 148 Tex. 289, 224 S.W.2d 466, 469 (1949)); Brown v. Todd, 53 S.W.3d 297, 305 n.3
(Tex. 2001) (“[b]ecause standing is a component of
subject matter jurisdiction, we consider [it] as we would a plea to the
jurisdiction, construing the pleadings in favor of the plaintiff”).  We also consider evidence relevant to the
inquiry when necessary.  See Miranda,
133 S.W.3d at 227. 
The standard for resolving a jurisdictional dispute
“generally mirrors that of a [traditional] summary judgment.”  Id. at
227-28 (citing Tex. R. Civ. P. 166a(c)).

Generally, owning an interest in
property at the time of its alleged taking would confer standing to sue for the
taking.  See Hollywood
Park Humane Soc’y v. Town of Hollywood Park, 261
S.W.3d 135, 140 (Tex.App.--San Antonio 2008, no pet.)
(citing Tex. S.
Univ. v. State St. Bank & Trust Co., 212, S.W.3d 893, 903 (Tex.App.--Houston [1st Dist.] 2007, pet. denied)).  A case the State cites illustrates
application of the rule. In Allodial Limited P’ship v. North Texas Tollway
Auth., 176 S.W.3d 680 (Tex.App.—Dallas 2005, pet.
denied), an inverse condemnation case, the court found Allodial
lacked standing to sue for damage to property it had purchased because its
takings claim was not assigned to Allodial by the
seller.  Generally, the court noted, such
a claim “belongs to the entity who owns the property at the time of the
injury.”  Id. at 683.

            In
its order denying class certification, the trial court concluded only those
owning land adjacent to the river in 1981 possessed standing to assert a
takings claim.  It found the Coon trust,
the Borger Ranch partnership, and Johnson did not own land adjacent to the
disputed river boundary in 1981, and each thus lacked standing to bring a
takings claim.  

In their live pleading, appellants inter alia alleged “they have been
owners in fee simple of the properties [identified in their pleading] and have
been and are at all material times entitled to possession of all of said
property.  [The State has] unlawfully
entered upon and dispossess (sic) [appellants] of such premises and have
continued to withhold possession.”  In a
later pleading responding to a motion filed by the State, appellants alleged,
“Through devise, descent, or assignment, the named Plaintiffs here own
interests in the property that were taken by the State.”

In its response to appellants’ motion
for class certification, the State challenged those appellants’ standing to
pursue a takings claim.  To support its
argument, the State directed the trial court to deposition excerpts.  Johnson, appearing individually and as
representative of the Borger Ranch partnership, testified the partnership was
formed in 1998 and he individually purchased a surface interest in sections 22
through 26 along the north side of the river in 2003.  Coon, appearing individually and as trustee
of the Coon trust, testified to the effect the trust was created in the “early
to mid” 1990s.  When asked in 2008 if the
trust still owned interests along the river, Coon responded “I can’t answer
that.  I don’t know.  I don’t think so.”[8]  

            If,
after taking as true a plaintiff’s allegations of standing and construing its
pleadings in the most favorable light and after considering any evidence of
standing presented, a material issue of fact remains as to the plaintiff’s
standing, the trial court must not sustain the jurisdictional challenge.  See State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007) (addressing
plea to the jurisdiction, and citing Miranda,
133 S.W.3d at 227-28).  While the
deposition testimony to which the State pointed the trial court to support its
challenge clouds the pleading picture and might give rise to an inference
supporting the court’s ruling, we do not agree the present state of the record
conclusively demonstrates that the Coon trust, the Borger Ranch partnership,
and Johnson each lacked standing to bring the claims alleged.  We conclude that on the record before us the
trial court erred in finding the Coon trust, the Borger Ranch partnership, and
Johnson lack standing.  Our disposition
of this issue does not, of course, preclude its further consideration by the
trial court.  See Oakland v.
Travelocity.Com, Inc., No. 02-08-0260-CV, 2009 Tex. App. Lexis 4646, at *16
(Tex.App.--Fort Worth June 18, 2009, pet. denied) (mem. op.) (citing Tex. Ass’n of
Bus., 852 S.W.3d at 445) (standing is a component
of subject matter jurisdiction which may be raised at any time).

Class Certification

For certification, a class action
must meet the four requirements stated in Rule of Civil Procedure 42(a): (1) numerosity--the class is so numerous that joinder of all members is impracticable; (2)
commonality--there are questions of law or fact common to the class; (3)
typicality--the claims or defenses of the representative parties are typical of
the claims or defenses of the class; and (4) adequacy of representation--the
representative parties will fairly and adequately protect the interests of the
class. Citizens Ins. Co. of America v. Daccach, 217 S.W.3d 430, 438 (Tex. 2007) (citing Tex.
R. Civ. P. 42(a)).  A class action must
also satisfy at least one requirement of Rule 42(b).  See
Tex. R. Civ. P. 42(b).  

A class certification order is
reviewed on appeal for abuse of discretion.   
Bowden v.
Phillips Petroleum Co., 247 S.W.3d 690, 696 (Tex. 2008) (citations
omitted).  “Although a trial court
generally has broad discretion to determine whether to certify a class action,
it must apply a rigorous analysis to determine whether all certification
requirements have been satisfied.” Id.


Further, certification is not
mandatory, even if the requirements of Rule 42 are satisfied.  Vincent v. Bank of Am., N.A., 109 S.W.3d 856, 864 (Tex.App.--Dallas 2003, pet. denied).  The word “may” in
Rule 42(a) is permissive, not mandatory. 
Denial of class certification may not amount to an abuse of discretion,
even were certification proper.  Id. 
An appellant “seeking to reverse an order denying class certification
faces a formidable task.”  Id. 
It must demonstrate satisfaction of all the Rule 42 requirements for
certification and that the trial court’s refusal to certify was legally
unreasonable under the facts and circumstances of the case.  Id.;
Cyganek v. A.J.’s Wrecker Serv. of Dallas, Inc.,
No. 05-08-01346, 2009 Tex. App. Lexis 5216, at *2-*3 (Tex.App.--Dallas
July 8, 2009, no pet.) (mem.
op.).

The trial court concluded appellants
did not meet the typicality and adequacy of representation requirements of Rule
42(a).  Tex. R. Civ. P. 42(a)(3),(4).  Because we
find it dispositive of the remainder of the appeal, we turn first to
appellants’ claim that the trial court abused its discretion in finding they
could not fairly and adequately protect the interests of the class.

Adequacy of Representation

In the order denying certification
the trial court concluded the class representatives would not fairly and
adequately protect the class interests because (1) the claims of the
representatives conflict with the claims of other proposed class members who
have signed a 2002 agreement with the State, the Canadian River Mineral
Boundary Agreement for Western Hutchinson County, Texas; and (2) the claims of
the representatives conflict with claims of other proposed class members who
own land on opposite sides of the Canadian riverbed.  

            The
Boundary Agreement recites, among other things, that controversies have arisen
concerning the location of the boundary of the Canadian River.  It further recites its named parties, which
include the State and J. M. Huber Corporation, the State’s oil and gas lessee,
intend to “resolve all disputes among them as to the boundary of their mineral
estates between the bed of the [Canadian River] and the lands adjacent to the
river.  [The parties] also wish to
establish a framework for settlement so that other State Lessees and other
Riparian Owners may elect to join this Agreement upon the same terms and conditions.”  The agreement defines “Riparian Owners” to
include “any other owner of an oil, gas or mineral interest (including a
leasehold interest) in lands adjacent to the [Canadian River] and who
hereinafter joins this Agreement by ratification . . . .”  In the agreement, its parties stipulate to an
agreed riverbed, centerline, and banks. 
It includes a replacement oil and gas lease and provides for certain
additional “compensatory” mineral royalty payments.  Finally, it contains a release purporting to
absolve the State of any liability to the riparian owners for claims pertaining
to or relating to the boundary of their mineral estates between the bed of the
river and the lands adjacent to the river.

The record contains some eighty-five
documents, executed by some seventy-one individuals and entities, purporting to
ratify the Boundary Agreement.  Needless
to say, none of appellants have ratified the Boundary Agreement.  The record does not indicate if others
ratified the agreement.[9]


The only witness appearing live at
the certification hearing was a putative class member who signed the Boundary
Agreement.  He expressed opposition to
his inclusion in the class and any attempt to invalidate the agreement.

            The
trial court also found a conflict in the claims of class representatives and
those of other proposed class members owning land on opposite sides of the
river bed.  The essence of this
conclusion is a potential conflict between landowners on the north side of the
river and those on the south side. 
According to Johnson’s affidavit testimony, for a time even predating
the Sanford Dam water has not continuously flowed in the riverbed.  Appellants have not yet obtained a survey
identifying the lands they assert were taken by the State.  According to the State, the absence of
flowing water in the riverbed creates a likelihood of conflict between
landowners on either side of the river. 
That is, those on the north will desire placement of the bed as far
south as possible and those on the south will desire the opposite
placement.  Appellants dismiss this
argument as a “red herring” interposed to detract from their claim of land
taken on both sides of the riverbed.  

            In
a class action, class representatives must fairly and adequately protect the
interests of the class.  Tex. R. Civ. P.
42(a)(4).  This
requirement means: (1) an absence of antagonism between the class
representatives and the class members, and (2) an assurance the representatives
will vigorously prosecute the class claims and defenses.  E & V Slack, Inc. v. Shell Oil Co., 969 S.W.2d 565, 568 (Tex.App.--Austin 1998, no pet.).  The primary consideration is antagonism
between the interests of the representatives and the remaining members of the
putative class.  Adams v. Reagan, 791 S.W.2d 284, 291 (Tex.App.--Fort Worth 1990, no writ).  In other words, the adequacy inquiry serves
to uncover conflicts of interest between class representatives and putative
class members.  Amchem Products v. Windsor, 521
U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689
(1997).  

Claims of class conflict must not be
speculative but must go to the “very subject matter of the litigation” to
defeat a party’s claim of representative status.  Employers
Cas. Co.
v. Texas Ass’n of Sch. Bds. Workers’ Compensation
Self-Ins. Fund, 886 S.W.2d 470, 476 (Tex.App.--Austin 1994, writ dism’d
w.o.j.) (claim
must not be speculative); Forsyth v. Lake
LBJ Inv. Corp., 903 S.W.2d 146, 151 (Tex.App.--Austin
1995, writ dism’d w.o.j.) (claim must go to the subject matter of the litigation).  Thus, in Horton
v. Goose Creek Independent School District, the court noted class
certification may be denied for lack of adequate representation if there is a
possibility of significant disagreement within the proposed class. 690 F.2d 470, 485-86 (5th Cir. 1982).  Likewise, in Swain v. Brinegar, lack of adequate
representation was found because of the possibility some putative class members
would not support a class action.  517 F.2d 766, 780 (7th Cir. 1975).  And conflict potentially precluding a finding
of adequacy of representation was noted in Stirman v. Exxon.  280 F.3d 554 (5th Cir. 2002).  There the court reversed a certification
order finding among other things, the district court erred by failing to
rigorously address a class representative’s adequacy as she had no incentive to
fully litigate claims not applicable to her and she previously agreed to abide
by a Texas statute of limitations even though this might cause other class
members residing in other jurisdictions with longer statutes of limitations to
lose some of their claims.  Id. at 563 & n.7.  The inability of putative class
representatives to adequately represent a broad class where conflict appears
was shown in Mayfield v. Dalton.  109 F.3d 1423 (9th Cir.
1997).  There, two members of the
Marine Corps judicially challenged a program requiring members of the armed
forces provide DNA samples. They sought certification of a class consisting of
all Navy and Marine Corps personnel compelled to participate in the program.  Id. at 1424.  Finding
a conflict of interests between the putative representatives and class members,
the circuit court noted the two putative representatives opposed the program
but in the broad class they proposed, others undoubtedly held a contrary
position, approving the program and desiring its full enforcement.  Id. at 1427.

Appellants first point out the January 1, 2002
effective date of the Boundary Agreement was some six months after appellants
filed their original class action petition, and argue that by settling with some
landowners the State thus created an asserted conflict that did not exist when
certification was first requested. 
Appellants cite Lubin v. Farmers’ Group, Inc., No.
03-03-0374-CV, 2009 Tex. App. Lexis 8584, at *49-*52 (Tex.App.--Austin
Nov. 6, 2009, no pet.) (mem.
op.) for the proposition that class certification
should not be defeated by a conflict created by wrongdoing on the part of one
opposing certification.  But the timing
of the State’s settlement with some landowners has not been determined to be
“wrongdoing,” and we see no parallel in the record before us between the
State’s action in entering into the Boundary Agreement and the insurance code
violations described in Lubin.  See id.
at *51-*52.

Appellants also argue there is no
actual conflict between the class representatives and proposed class members
who have ratified the Boundary Agreement because the outcome of the present
suit will not prohibit those who have joined the agreement from continuing to
honor it.[10]  In that regard, we cannot ignore the
antagonism toward the Boundary Agreement reflected in the record.  Appellants told the trial court during the
certification hearing there is a question whether the agreement is “even
valid,” and expressed a desire to address that question in the present
suit.  And on appeal, appellants’
argument on this point contains the phrase “assuming the Agreement is not
void.”  These and other similar
statements in the record, together with the testimony of the landowner who
opposed his inclusion in the class, lend support to the trial court’s
recognition of potential conflict between members of the proposed class who
have settled with the State and those who have not.   

            We
conclude the potential and actual conflict in the proposed class concerning
ratification of the Boundary Agreement vis-à-vis advancing the claims of the
class representatives, the validity of the agreement, and the location of the
north and south boundaries of the riverbed goes to the very subject matter of
the takings claims alleged.  Therefore,
on this record we are unable to say the trial court abused its discretion by
finding the class representatives could not fairly and adequately protect the
interests of the class.  Because it was
for appellants to satisfy each of the requirements of Rule 42(a), and as the
trial court did not abuse its discretion by its finding regarding adequacy of
representation, it is unnecessary to our disposition of the appeal to discuss
typicality and the alternative requirements of Rule 42(b).

Conclusion

            Finding
the evidence was not conclusive that the June Coon trust, the Johnson Borger
Ranch Partnership, and Montford Johnson III lack
standing, we reverse that portion of the trial court’s order.  Otherwise, we affirm its order denying class
certification and remand the case for further proceedings consistent with this
opinion.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

 

 











[1]  See Tex. R. Civ. P. 42 (class actions).

 





[2] State v. Brainard, 968 S.W.2d 403 (Tex.App.--Amarillo
1998), aff'd in part and rev’d
in part, 12 S.W.3d 6 (Tex. 1999)) provides additional facts surrounding the
boundary disputes between the State and adjoining landowners along the Canadian
River east of the Sanford Dam.

 





[3] State v. Riemer, 94 S.W.3d
103, 112 (Tex.App.--Amarillo 2002, no pet.).

 





[4] The Texas Constitution provides that, “No person’s
property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person
. . . .”  Tex. Const.
art. I, § 17. 
“‘Taking,’ ‘damaging,’ and ‘destruction’ of one’s property are three
distinct claims arising under Article I, Section 17.  However, the term ‘taking’ has become used as
shorthand to refer to all three types of claims.”  City of Dallas v. Jennings, 142 S.W.3d 310, 313 n.2 (Tex. 2004) (citations
omitted).





[5]  Tex. R. Civ. P. 42(b).

 





[6] See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(3) (Vernon 2008) (permitting interlocutory appeal of
orders refusing to certify a class).





[7] But cf. Coastal
Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 9 n.16 (Tex.
2008)  (“[t]his Court has not indicated
whether standing is always a matter of subject-matter jurisdiction”). 





[8] He later clarified his answer, testifying the trust
did not own any mineral interests along the river as those interests were
distributed to him and his sister in late 2007.





[9] At oral argument, however, the State indicated others
among the proposed class have ratified the agreement. 





[10] Our consideration of the Boundary Agreement and its
impact on class certification should not be taken as any comment on the
validity or effect of the Boundary Agreement, or a comment on the effect of the
relief sought in the present suit on the rights of those who have ratified the
agreement.  No such question is before
us.